SIDNEY COHEN *v.* HOLLOWAYS', INC.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued May 13—decided July 22, 1969

*John P. Harbison,* for the appellant (defendant).

*Joseph Asbel,* with whom was *William Pease,* for the appellee (plaintiff).

RYAN, J. The instant case, wherein the plaintiff seeks the release of a right of way over his land together with damages, was returnable to the Superior Court in May, 1963. A second case, *Cohen* v. *Roddy,* No. 140759, was returnable to the Superior Court in Hartford County in January, 1965. In the latter case, Carroll E. Holloway was cited in as an additional party defendant in February, 1965. Although the cases were separate, they were so related that counsel agreed to try them together and further agreed that the evidence introduced would be applicable to both cases. Upon the finding and

report of the referee, the trial court rendered judgment for the plaintiff in both cases. The only appeal taken was by the corporate defendant in the instant case.

The defendant, in its assignments of error, has attempted, in effect, to redraft the report of the referee. This court has consistently discountenanced such a wholesale attack upon the finding. *State* v. *Dukes,* 157 Conn. 498, 499, 225 A.2d 614; *Marrone* v. *Jose,* 153 Conn. 275, 276, 216 A.2d 196; *Jarrett* v. *Jarrett,* 151 Conn. 180, 181, 195 A.2d 430. In assigning error in the findings contained in the referee's report, the defendant has failed in many instances to designate the particular paragraphs of the finding in which the referee allegedly found material facts without evidence, as required by our rules. Practice Book § 622. We have, however, reviewed the attacks made on the finding which either were stated in or can be inferred from the assignments of error.

The defendant seeks to have added to the finding a number of paragraphs on the ground that the facts stated in them were admitted or undisputed. To secure an addition on this ground, it is necessary for an appellant to point to some part of the appendix, the pleadings, or an exhibit properly before us which discloses that the appellee admitted that the fact in question was true or that its truth was conceded to be undisputed. *Martin* v. *Kavanewsky,* 157 Conn. 514, 515, 225 A.2d 619; *State* v. *Dukes,* supra, 500. That a fact was testified to and was not directly contradicted by another witness is wholly insufficient. Practice Book § 628 (a). The trier is the judge of the credibility of witnesses. *Banks* v. *Adelman,* 144 Conn. 176, 179, 128 A.2d 534.

Subject to the corrections to which the defendant

is entitled and the amplifications necessary for a clear presentation of the complex factual situation, the referee found the following facts in his report, as corrected: In the early 1950's, James W. Roddy and Carroll E. Holloway participated in the development of what is now known as the College Highway Shopping Center in the town of Simsbury. This center is on the easterly side of what is now known as Hopmeadow Street. The street was some fifteen feet or more above the surrounding ground. Fill was brought in so that the parking lot in front of the stores was level with the highway. Stores were built at the southerly end, and, as tenants were found, new stores were constructed. The direction of expansion was from south to north. To get to the rear of the stores, it was necessary to construct a ramp-type driveway, or roadway, along the northerly side of the stores. No less than three such roadways were built from 1953 to 1961. The roadways were moved northerly as the shopping center expanded. To satisfy mortgage requirements, on February 27, 1953, the then owners of the shopping center, Roddy, Holloway, William A. Tierney and Axel E. Westerberg, entered into a formal right-of-way agreement. By the terms of this agreement, a mutual driveway was created which ran easterly from Hopmeadow Street to the rear of the shopping center on the southerly boundary of the southernmost parcel of land, owned by Westerberg, then northerly to the northerly boundary of the northernmost parcel of land in the center, owned by Roddy, then westerly along this boundary to Hopmeadow Street.

Prior to March 23, 1956, Carroll E. Holloway caused a corporation to be formed known as Holloways', Inc., the defendant in this case, and he trans-

ferred all properties owned by him in the shopping center to the corporation. This was a family corporation of which Carroll E. Holloway was president. Holloway, his wife and their two sons are the only stockholders. At all times from the date of incorporation of the defendant, Holloway has been the president of the defendant corporation, has been the agent for service of process upon the corporation and has had general power and authority to act for the defendant. Shortly after this transfer, Tierney conveyed his parcel in the shopping center to the defendant. Prior to March 23, 1956, Holloway and Roddy orally formed a partnership known as the Roddy and Holloway Development Company.

Prior to March 23, 1956, Roddy entered into negotiations with Thomas E. Hunt for the purchase of additional land at the north end of the shopping center. These negotiations were conducted in behalf of the partnership and for the protection of its interests in the shopping center. At one meeting, Roddy, Hunt, Holloway, an attorney and a surveyor met on the site, and, as a result of this meeting, a map was prepared by Harold R. Sanderson, dated February 22, 1956, and filed for record in the town clerk's office on March 29, 1956. A portion of this map is reproduced on the next page. Roddy and Holloway made arrangements with the Simsbury Bank and Trust Company to finance the purchase of this property from Hunt. Because of the fact that Hunt and Holloway were not on friendly terms, Roddy performed all the negotiations for the partnership. On March 23, 1956, Hunt conveyed parcel C on the map to Roddy. Roddy then conveyed a one-half interest in the parcel to Holloway. On the same date, by separate deed, Hunt conveyed parcel B to Roddy. Roddy then executed an agree-

ment with Hunt which provided that Roddy would construct a roadway similar to the one then existing. On the map, at the southerly boundary of parcel B, the existing roadway was designated "Portion of 12′ R.O.W. To Be Released." The new roadway was to be constructed within a twenty-foot strip of land over the southerly portion of the property (parcel

C) conveyed to Roddy by Hunt. When the new roadway was constructed, Hunt was to execute a release of his interest in the old twelve-foot roadway over parcel B. All this was to be done within a period of five years. All of the above-mentioned documents were executed on March 23, 1956, and were drafted by an attorney who represented all of the parties.

All the legal documents executed on March 23, 1956, referred to the map dated February 22, 1956, which map was filed in the town clerk's office of Simsbury.[1] It should be noted at this point that these references to the map have the effect of incorporating the map into the deeds referring to it. General Statutes § 7-31; *Barri* v. *Schwarz Bros. Co.,* 93 Conn. 501, 508, 107 A. 3. This map showed that Hunt still retained title to a piece of land in the northeast corner of the shopping center designated "Thomas Hunt." The new twenty-foot right of way over parcels B and C was clearly indicated. It also showed the twelve-foot right of way. It further showed that 150 feet of the twelve-foot right of way running easterly from Hopmeadow Street was to be released. The portion of the twelve-foot right of way to be released runs through parcel B. Hunt, Roddy and Holloway all received blueprint copies of this map. Holloway, in fact, gave such a blueprint copy to Attorney William Pease.

The partnership of Roddy and Holloway Development Company was involved in other projects not involved in this case. It was in some financial difficulty, and Roddy, in order to prevent liens from being placed on the partnership property, sold to

---

[1] Parcel B as designated on this map contains a small portion of land described by earlier maps and deeds as "Parcel A".

the plaintiff and others, known as K.S.B. Associates, a parcel of land which included parcel B and also a small portion of parcel A. The proceeds of the sale were used to pay partnership debts. Holloway was informed of what was taking place. Later, on February 20, 1959, there was an exchange of deeds between the plaintiff and his associates and Roddy, whereby the plaintiff and his associates received a parcel of land slightly larger than before. To remove any ambiguity created by his reserving an indefinite right of way over the portion of parcel B which he had conveyed to Roddy, Hunt, on February 20, executed a release of the right of way covering the southerly thirty-five feet of the property. Before Roddy reconveyed to the plaintiff and his associates, he granted a right of way to Hunt over that portion of the twelve-foot right of way running from the highway to the railroad. Roddy, at this time, also conveyed the remaining portion of parcel A to others.

On May 19, 1959, Roddy and Holloway conveyed their interest in parcel C to the defendant. On June 15, 1959, Hunt also conveyed his interest in the property designated "Thomas Hunt" to the defendant. To finance these purchases, the defendant executed a mortgage deed to the Society for Savings. All these deeds referred to the aforementioned map for descriptions of the properties conveyed. As part of the consideration for the transfer of parcel C from Roddy and Holloway to the defendant, Holloway, acting as president of the defendant, orally agreed to assume all obligations of the partnership as far as parcel C was concerned. Holloway had full authority to act for the defendant in these negotiations.

Shortly after the defendant corporation acquired

title to the above parcels, Holloway and the defend-
ant caused to be installed catch basins and drainage
pipes on parcel C so that a small stream could be
completely put underground. After this, fill and
other materials were brought in, and a ramp-type
roadway was built within parcel C and within the
twenty-foot strip of land set aside for that purpose.
Some of this work was done by Holloway or his
sons, using a dump truck apparently owned by the
defendant, Holloways', Inc.

After March 23, 1956, and through 1963, Holloway
ordered, individually or on behalf of the defendant,
additional surveys from Clifford A. Washburn, Jr.
A sketch was also prepared by a Mr. Riggott show-
ing proposed locations of future buildings. Hollo-
way also ordered a map from Merton Hodge. All
of these maps and sketches no longer showed the
twelve-foot right of way as crossing parcel B. It
had been deleted.

The purchase of parcel B by the plaintiff and
K.S.B. Associates was unusual. Deposits were
given, and the balance of the purchase price was
paid before any deed was delivered. After the full
purchase price was paid by the plaintiff, an agree-
ment to buy, dated June 19, 1957, was executed.
This agreement to buy stated that the property was
to be conveyed free and clear of all encumbrances.
A month or so later, a deed was signed by Roddy.
By December of 1958, the deed had not yet been
delivered. During this period, the plaintiff had At-
torney Benjamin Globman do a title search on the
property. He informed the plaintiff that a twelve-
foot right of way ran through the property which
he and K.S.B. Associates were purchasing. This
information was related to Roddy. Roddy, to re-
move any fears of his buyers, had his attorney write

a letter, dated December 5, 1958, stating that the twelve-foot right of way was to be removed. This letter was countersigned by Roddy. In January, 1959, Roddy signed another paper setting forth his obligation to remove the right of way in question. A month or so after the original deed was recorded, there was the exchange of deeds previously described between Roddy and the plaintiff and his associates. The proposed release of the portion of the twelve-foot right of way on the enlarged parcel B in favor of the new twenty-foot right of way to be placed on parcel C provided Carroll E. Holloway, as well as others who also had rights to the portion of the twelve-foot right of way over the now enlarged parcel B, safer, more convenient and more valuable access to Hopmeadow Street.

After this, nothing was done relative to parcel B until an exchange of deeds which gave A. John Kevorkian the northerly forty feet and the plaintiff the southerly twenty feet of parcel B. The twenty-foot parcel of land which was the plaintiff's portion of the property contained the twelve-foot right of way which was to be released. Both Kevorkian and the plaintiff, individually, sought mortgage financing of stores to be erected on their respective properties. Both men went to the Small Business Administration and to the Simsbury Bank and Trust Company seeking the necessary financing. Of course, title examination was necessary. After the title work was completed, the plaintiff was informed that the twelve-foot right of way had not been released of record. The plaintiff relied upon and produced the various writings, signed by Roddy, to the effect that the right of way was to be released. Attorney Pease prepared a release of the twelve-foot right of way, which document included all the

owners of the shopping center and their mortgagees. This release was signed by all of the owners except the defendant, which, acting through its president, refused to sign. The significance of the signature of Axel E. Westerberg on this release will be discussed later. When the release was presented to the defendant, the plaintiff's store was approximately 90 percent completed. While some difficulties arose during the construction of the plaintiff's store, nothing was said by Holloway or any other stockholder in the defendant corporation about the fact that the plaintiff had completely destroyed the twelve-foot right of way in the erection of his store. On April 2, 1962, Westerberg conveyed his parcel of land in the shopping center to the defendant.

On the basis of this finding, the referee recommended that the defendant be ordered to execute the aforesaid release. With this release executed, the title to the plaintiff's land would be marketable. The court accepted the referee's report and rendered judgment pursuant to it. In accepting the report of the referee, the trial court in its memorandum of decision concluded that the plaintiff believed that this twelve-foot right of way had been extinguished by the creation of a twenty-foot right of way over the defendant's land; that all of the parties to the two actions were bound by an agreement to effectuate this substitution; that the right of way to be released over the land later acquired by the plaintiff and the new twenty-foot right of way to be created were set forth in a map filed as a public record in the town clerk's office; and that the defendant corporation acted in pursuance thereto and further that it was bound thereby by its assumption of the partnership obligations of Roddy and Holloway and as an assignee of Thomas Hunt, its predecessor in title.

The court rendered judgment wherein it ordered that the defendant, Holloway's, Inc., execute a release of its rights over the portion of the plaintiff's land shown as "Portion of 12′ R.O.W. to Be Released" on the map dated February 22, 1956, on file in the town clerk's office of Simsbury, "being 12 feet in width and 150 feet in length." The area involved was described with particularity.

While the defendant urges numerous assignments of error, its basic claim, the answer to which is determinative of this appeal, is that the judgment cannot be sustained because the corporation was under no duty to execute a release of the twelve-foot easement. It urges that the defendant corporation did not assume the obligation of the partnership of Roddy and Holloway wherein the partnership agreed, upon the completion of a substitute driveway over those portions of parcels B and C shown on the map as a twenty-foot right of way, to release the twelve-foot right of way over parcel B owned by the plaintiff, and that there was no finding of any authority, express or implied, given by the corporation to Holloway, its president, to enter into any such agreement.

There is nothing in the referee's finding which indicates that any express authority was given to Holloway by the corporation to assume the obligations of the partnership as part consideration for the conveyance of parcel C from Roddy and Carroll E. Holloway to the corporation. Holloway, as president of the corporation, had no inherent authority by virtue of his office to bind the defendant. "The corporation is only liable for the acts of its president if it is shown that his acts are so related to his duties as president that they may reasonably be held to have been done in the prosecu-

tion of the business of the corporation and while he was acting within the scope of his employment." *Baptist* v. *Shanen,* 145 Conn. 605, 608, 145 A.2d 592. Certainly the facts found by the referee indicate that Holloway had apparent authority to bind the defendant in assuming the obligations of the partnership relative to parcel C. "[A]pparent authority is to be determined, not by the agent's own acts, but by the acts of the principal. And the acts of the principal must be such that (1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority." *Nowak* v. *Capitol Motors, Inc.,* 158 Conn. 65, 69, 255 A.2d 845. The defendant permitted Holloway to act as its agent not only in the purchase of parcel C from the partnership but in the purchase from Hunt of the parcel designated on the map as "Thomas Hunt". It was not unreasonable for Roddy to believe that Holloway did, in fact, have authority to bind the defendant to assume the partnership obligations relative to parcel C.

While there was no finding of express ratification of Holloway's actions, there were ample grounds to find implied ratification. "If the officers or the agents of a corporation assume to act for the corporation without any authority at all, or if they exceed their authority or act irregularly, and the act is one which could have been authorized in the first instance by the stockholders, board of directors or subordinate officers, as the case may be, it may be expressly or impliedly ratified by them, and thus be rendered

just as binding, except as to intervening rights of third persons, as if it had been authorized when done, or done regularly. In this respect, a corporation is subject to substantially the same rules as a natural person. And as a large portion of the business of today is done by corporations, they are, and it is just that they should be, subjected to the rule. . . . Accordingly, as a general rule, if the corporation, through the officer or body having authority to act, acquires or is charged with knowledge of the unauthorized act, the act not being prohibited by charter or by statute nor contrary to public policy, and does not repudiate it within a reasonable time, but without objection acquiesces therein, it is bound by the unauthorized act. These holdings are sometimes put upon the ground that ratification of the unauthorized act is presumed from failure to disaffirm. This is simply another way of saying that the authority of the act cannot be challenged because of the injustice which would arise if the strict letter of the law as to the necessity for authority of the act were followed." 2 Fletcher Corporations (Perm. Ed. 1969 Rev.) § 752; *Mercer* v. *Steil,* 97 Conn. 583, 588, 117 A. 689. "In order to ratify the unauthorized act of an agent and make it effectual and obligatory upon the principal, the general rule is that the ratification must be made by the principal with a full and complete knowledge of all the material facts connected with the transaction to which it relates; and this rule applies, of course, to ratification by a corporation of an unauthorized contract or other act by its officers or agents, whether the ratification is by the stockholders or by the directors, or by a subordinate officer having authority to ratify." 2 Fletcher, op. cit. § 756; see *O'Connor* v. *Metropolitan Life Ins. Co.,* 121 Conn. 599, 186 A. 618.

"[A]s a general rule, if a corporation, with knowledge of the facts, accepts or retains the benefits of an unauthorized contract or other transaction by its officers or agents, as where it receives and uses or retains money or property paid or delivered by the other party, or accepts the benefit of services, etc., it thereby ratifies the contract or other transaction, or will be estopped to deny ratification. In other words, the law does not permit a corporation to receive and retain the benefits of a contract or transaction and at the same time repudiate liability thereunder or attempt to escape the burdens thereof on the ground that the contract or transaction was not authorized, or that authority therefor was not set forth in its records. This rule is based upon the doctrine of ratification in toto, under which a principal must either ratify the whole transaction or repudiate the whole. He cannot separate the transaction and ratify the part that is beneficial to him, repudiating the remainder; but if he, of his own election and with full knowledge, accepts and retains the benefits of an unauthorized transaction, he must also accept the part that is not beneficial, and will be held to have ratified the whole." 2 Fletcher, op. cit. § 773.

The deed from Roddy and Holloway conveying parcel C to the defendant, dated May 19, 1959, was a quitclaim deed wherein the consideration was recited as follows: "one (1) Dollar and other valuable consideration (being less than One Hundred (100) Dollars". The deed contained no revenue stamps, and there is nothing in the finding to indicate that any sum of money was paid to the partnership. The function of a deed is merely to pass title to land, pursuant to the agreement of the parties. What the terms of the agreement are is a

question of fact for the trier. *Patalano* v. *Chabot,* 139 Conn. 356, 360, 94 A.2d 15; *Steinmetz* v. *Steinmetz,* 127 Conn. 700, 704, 20 A.2d 453; *Anderson* v. *Colwell,* 93 Conn. 61, 65, 104 A. 242. The real consideration of a deed or other written contract may always be shown by parol evidence. *R. A. Sherman's Sons Co.* v. *Industrial & Mfg. Co.,* 82 Conn. 479, 481, 74 A. 773. The referee recognized that an obvious element of the consideration for the deed was the agreement by Holloway, acting as president and agent of the corporation, that Holloways', Inc., would assume the obligations of the partnership concerning parcel C. The obligation of the partnership in this respect was to relocate the right of way in a twenty-foot strip of land across parcels B and C as shown on the map and to eliminate completely that portion of the old twelve-foot right of way on the plaintiff's land. Shortly after the conveyance, the defendant corporation participated in the installation of catch basins and drainage pipes so that a small stream was put completely underground, and it participated in the construction of a roadway built within parcel C and located within the twenty-foot strip of land reserved for that purpose. Furthermore, the defendant was alerted by numerous maps of the shopping center which it and its president caused to be prepared between March 23, 1956, and through 1963. On each of these maps, the twelve-foot right of way over the plaintiff's property had been deleted. When the plaintiff began construction of his store, the defendant made no effort to prevent him from building directly on the former twelve-foot right of way, and it made no claim of right concerning the right of way until it was asked to sign a release together with others. The finding of the referee that Holloway did, in

fact, act for the corporation as well as for himself in the negotiations for parcel C was entirely reasonable and cannot be disturbed. There can be no doubt that the defendant had full knowledge of all the material circumstances. It accepted the conveyance of parcel C from the partnership and proceeded to carry out the agreement which was part of the consideration for the transfer by participating in the construction of the new road on the substituted right of way. A conclusion that the defendant impliedly ratified the actions of Holloway is inescapable. "The acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances, is a ratification." *Ansonia* v. *Cooper,* 64 Conn. 536, 544, 30 A. 760; *Bond Rubber Corporation* v. *Oates Bros., Inc.,* 136 Conn. 248, 251, 70 A.2d 115; 19 Am. Jur. 2d, Corporations, § 1245. The acceptance of the benefits of the transaction imposes an obligation to assume its burdens. *Tryon* v. *White & Corbin Co.,* 62 Conn. 161, 173, 25 A. 712; *Union Hardware Co.* v. *Plume & Atwood Mfg. Co.,* 58 Conn. 219, 221, 20 A. 455.

The defendant claims that by virtue of the conveyance to it by Westerberg of his land in the shopping center it acquired his rights in the twelve-foot right of way over parcel B. This conveyance was dated April 2, 1962. The release of the twelve-foot right of way over the plaintiff's land was executed by Westerberg on March 20, 1963, at a time when he no longer had title to the land. Obviously the release by Westerberg was meaningless, except so far as it indicates that he, together with all the owners of real estate in the shopping center, understood clearly that the twelve-foot right of way over the plaintiff's land was to be eliminated. The defendant claims that by virtue of this deed it then

and there acquired a new undivided interest in the twelve-foot easement over the plaintiff's land which was not involved in Roddy's or the plaintiff's claims, operations, contracts or conveyances and was not subject to any duty to release. There is no merit to this claim. The obligation of the partnership which was assumed by the defendant corporation was not only to relocate the existing right of way in a twenty-foot strip of land over parcels B and C as shown on the map but to eliminate completely that portion of the old twelve-foot right of way on the plaintiff's land. This obligation existed, and the defendant was bound by it, long before the purchase of the Westerberg land. To permit the defendant, by any such subterfuge, to avoid its responsibility would be inequitable.

The remaining assignments of error are without merit and do not warrant discussion.

There is no error.

In this opinion the other judges concurred.