### Newtown Associates *v.* Northeast Structures, Inc.
### (5227)

Daly, Norcott and Foti, Js.

Argued December 9, 1987—decision released August 23, 1988

*Donald A. Mitchell,* for the appellant (defendant).

*Robert H. Hall,* for the appellee (plaintiff).

Norcott, J. The defendant appeals from the judgment of the trial court discharging the mechanic's lien filed against certain property owned by the plaintiff and leased by third parties. The defendant claims that the trial court erred in finding that there was no probable cause to support the mechanic's lien. We find no error.

For some twelve years prior to 1984, Edward P. Hayes, Jr., and Barbara S. Hayes operated a horse

farm in Rocky Hill. By 1984, however, the Hayeses had come to the conclusion that the farm in Rocky Hill was too small for their purposes and that they would need a larger farm. In the course of their search for a larger farm, the Hayeses contacted the plaintiff, a limited partnership which owned certain property on Poverty Hollow Road in Newtown. On June 6, 1984, the Hayeses entered into an agreement with the plaintiff to lease a portion of the plaintiff's property. The agreement provided that the Hayeses would pay an annual rental of $72,000 for the use of the plaintiff's property as an Arabian horse farm and as a residence. In order to facilitate the conversion of the property, which had heretofore been used as a dairy farm, into a quality Arabian horse farm, the Hayeses agreed to make certain enumerated investments and improvements. Work to be done by the Hayeses was to be done at their own expense, and the lease specifically provided that the Hayeses were to do no act which would subject the plaintiff's property to an encumbrance or a mechanic's lien. The plaintiff agreed to make other enumerated improvements and reserved the right to complete anything that the tenants failed to do in converting the premises. The plaintiff considered the essence of the agreement to be the conversion of the property into a quality Arabian horse farm so that the value of surrounding property owned by the plaintiff would be enhanced.

After an oral agreement was struck between the plaintiff and the Hayeses, but before the written lease was signed, the Hayeses engaged the services of the defendant to effect the improvements they were required to make under the agreement. The defendant entered into a series of contracts both oral and written with the Hayeses, each contract calling for the defendant to complete one aspect of the conversion project. The contracts called for, among other things, the construc-

tion of a horse barn and an arena and the installation of stalls in a mare barn. Subsequently, the plaintiff also engaged the services of the defendant to do some work on the property.

The defendant commenced work on the property in May of 1984. On hand to supervise the defendant's work were Edward Hayes and Stephen Hicks, an agent for the plaintiff whose primary purpose was to fulfill the plaintiff's obligations under the lease. In the ensuing months, the defendant provided labor and materials pursuant to contracts with both the plaintiff and the Hayeses. From time to time, the defendant suggested additional work that could be done on the property. The defendant presented suggestions to Edward Hayes and to Hicks who either approved or rejected them. With respect to certain suggestions, Hicks informed the defendant that the plaintiff would pay for them. With respect to the other suggestions, Hicks made no such representation.

When the defendant completed a particular aspect of the conversion project he submitted a bill for the work done. Some of the bills were submitted to the plaintiff and some were submitted to the Hayeses. All of the bills submitted to the plaintiff were paid.

The defendant's work on the property was fairly constant until April of 1985 when it slowed due to a number of factors, including the Hayeses' delay in paying the defendant for the work completed. The record indicates that the defendant submitted only one invoice after April of 1985, for work allegedly done on November 29, 1985.

On December 3, 1985, the Hayeses were evicted from the premises. The defendant filed a mechanic's lien on the plaintiff's property on February 27, 1986. After a hearing, the trial court granted the plaintiff's motion to discharge the lien finding that it was not supported

by probable cause in that (1) the plaintiff never consented to the filing of such a lien, and (2) the lien was untimely filed.

The defendant asserts that there was probable cause to support its lien. It contends (1) that the Hayeses and Hicks were agents of the plaintiff whose action bound the plaintiff for the improvements made on the property,[1] (2) that the plaintiff had consented to the filing of such a lien, and (3) that the lien was timely. We disagree.

"A mechanic's lien is a creature of statute. *Camputaro* v. *Stuart Hardwood Corporation,* 180 Conn. 545, 550, 429 A.2d 796 (1980); *Swift & Upson Lumber Co.* v. *Hatch Co.,* 115 Conn. 494, 498, 162 A. 19 (1932). Its remedial purpose is to furnish security for a contractor's labor and materials. *Camputaro* v. *Stuart Hardwood Corporation,* supra; *Stone* v. *Rosenfield,* 141 Conn. 188, 191, 104 A.2d 545 (1954)." *St. Catherine's Church Corporation* v. *Technical Planning Associates, Inc.,* 9 Conn. App. 682, 683–84, 520 A.2d 1298 (1987).

General Statutes § 49-35b (a)[2] provides that before a lien can be upheld the lienor must establish probable cause to sustain the validity of the lien. Proof of probable cause is not as demanding as proof by a fair preponderance of the evidence. *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corporation,* 172 Conn. 577, 584, 376 A.2d 60 (1977). " 'The legal idea of probable cause

---

[1] With respect to the Hayeses, the defendant does no more than make a mere assertion that they were the agents of the plaintiff. The defendant cites no case law in support of that proposition nor does it discuss what the scope of that agency was. Accordingly, we will not consider that claim on appeal. *In re Shavoughn K.,* 13 Conn. App. 91, 99–100 n.2, 534 A.2d 1243 (1987).

[2] General Statutes § 49-35b (a) provides in pertinent part: "Upon the hearing held on the application or motion set forth in section 49-35a, the lienor shall first be required to establish that there is probable cause to sustain the validity of his lien. . . ."

is a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.' *Wall* v. *Toomey,* 52 Conn. 35, 36 [1884] . . . ." *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corporation,* supra.

In order to demonstrate probable cause to support a lien upon land that he has improved, a person must first show that he is one of those persons entitled to claim a lien. " 'Those who provide services or materials in connection with the construction of a building are entitled to claim a lien on the land that they have improved if they fall into one of two categories. Lienors are protected if they have a claim either (1) by virtue of an agreement with or the consent of the owner of the land, or (2) by the consent of some person having authority from or rightfully acting for such owner in procuring labor or materials.' " *Hall* v. *Peacock Fixture & Electric Co.,* 193 Conn. 290, 293, 475 A.2d 1100 (1984), quoting *Seaman* v. *Climate Control Corporation,* 181 Conn. 592, 595, 436 A.2d 271 (1980).

In this case, it is clear that the defendant entered into an agreement with the plaintiff through its agent, Hicks, to provide certain of the improvements the plaintiff was required to make under its lease with the Hayeses. Further, the record indicates that Hicks specifically authorized certain changes in the project which were not called for in the lease and committed the plaintiff to pay for those changes. The record reflects, that when these charges were billed to the plaintiff, they were paid. It is the defendant's contention, however, that Hicks, acting as the plaintiff's agent, took further steps which committed the plaintiff to pay for all of the work done on the property.

It is a general rule of law that the principal in a principal/agent relationship is only " 'bound by, and liable

for, the acts which his agent does with or within the actual or apparent authority from the principal, and within the scope of the agent's employment . . . .' 3 Am. Jur. 2d, Agency § 261." *Bank of Montreal* v. *Gallo,* 3 Conn. App. 268, 273, 487 A.2d 1101 (1985). "The nature and extent of an agent's authority is a question of fact for the trier. *E. Paul Kovacs & Co.* v. *Alpert,* 180 Conn. 120, 126, 429 A.2d 829 (1980); 3 Am. Jur. 2d, Agency § 360." *Bank of Montreal* v. *Gallo,* supra.[3] In this case, the trial court could reasonably have found that Hicks' actual authority as agent for the plaintiff was limited to carrying out the owner's obligation under the lease. Such a limited role would not have allowed Hicks to commit the plaintiff to anything which was not specifically enumerated as one of the plaintiff's obligations in the lease.

The defendant next contends, however, that Hicks exercised an apparent authority over the conversion project which far exceeded the authority he was authorized to exercise by the plaintiff. " ' "Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses." *Lewis* v. *Michigan Millers Mutual Ins. Co.,* 154 Conn. 660, 665, 228 A.2d 803 (1967); see Restatement (Second), 1 Agency § 8 (1958). Apparent authority thus must be determined by the acts of the principal rather than by the acts of the agent. *Nowak* v. *Capitol Motors, Inc.,* 158 Conn. 65, 69, 255 A.2d 845 (1969).' *Botticello* v. *Stefanovicz,* [177 Conn. 22, 25–26 n.2, 411 A.2d 16 (1979)]; see also *Cohen* v. *Holloways', Inc.,* 158 Conn. 395, 407, 260 A.2d 573 (1969). Furthermore, the party

---

[3] With respect to this issue, we note that the trial court made no specific finding as to the scope of Hicks' agency. The defendant, however, has made no motion for articulation. In the absence of a motion for articulation, we will uphold the trial court's judgment on the agency issue unless it was clearly erroneous. *Pointina Beach Assn., Inc.* v. *Stella,* 1 Conn. App. 341, 343, 471 A.2d 970 (1984).

seeking to impose liability upon the principal must demonstrate that it acted in good faith based upon the actions or inadvertences of the principal. *Cohen* v. *Holloways', Inc.,* supra, 407; *Lewis* v. *Michigan Millers Mutual Ins. Co.,* supra, 665–66." *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 120, 140–41, 464 A.2d 6 (1983).

In this case, the plaintiff took no action which would allow the defendant to conclude that Hicks was authorized to undertake financial liability for the entire project. In fact, when the defendant commenced work on the conversion project, it was made aware of the fact that the Hayeses were responsible for some of the changes while the plaintiff was responsible for others. With respect to the changes in the conversion project which were not covered by contract, Hicks was very specific about those for which the plaintiff would be responsible. The plaintiff paid for those changes and gave no indication that it would pay for any others. The trial court could reasonably have found that the defendant did not establish probable cause that the plaintiff did anything which would commit it to pay for any of the unpaid bills.

The defendant next contends that there was probable cause to believe that it had done the work with the consent of the owner. "Under General Statutes § 49-33 (a),[4]

[4] General Statutes § 49-33 (a) provides: "If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim."

the consent required from the owner or one acting under the owner's authority is more than the 'mere granting of permission for work to be conducted on one's property'; *Hall* v. *Peacock Fixture & Electric Co.,* supra, 295; or the mere knowledge that work was being performed on one's land. *Avery* v. *Smith,* 96 Conn. 223, 227, 113 A. 313 (1921); *Lyon* v. *Champion,* 62 Conn. 75, 77, 25 A. 392 (1892); *Huntley* v. *Holt,* 58 Conn. 445, 449, 20 A. 469 (1890); *Wilbur Smith & Associates, Inc.* v. *F & J, Inc.,* 34 Conn. Sup. 638, 640, 382 A.2d 541 (1977). 'The consent meant by the statute must be a consent that indicates an agreement that the owner of at least the land shall be, or may be, liable for the materials or labor. As stated in *Peck* v. *Brush,* 90 Conn. 651, 98 Atl. 561 [1916]: "It is not necessary that the materials shall be furnished under an express contract, but it is enough if they are furnished with the consent of the owner of the land, so that there is an implied contract by him to pay for them." ' *Avery* v. *Smith,* supra, 228." *St. Catherine's Church Corporation* v. *Technical Planning Associates, Inc.,* supra, 684–85.

Whether the plaintiff consented to the performance of the defendant's work for the Hayeses or whether it consented to the performance of the additional work for which the plaintiff did not pay is a question of fact. Our review of the trial court's factual findings is limited to the question of whether the findings are clearly erroneous. Practice Book § 4185; *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 676–77, 443 A.2d 486 (1982); *Abacus Mortgage Ins. Co.* v. *Whitewood Hills Development Corporation,* 2 Conn. App. 460, 463, 479 A.2d 1231 (1984).

In this case, it is clear that the plaintiff did not consent to the performance of the defendant's work for the Hayeses. The agreement between the plaintiff and the Hayeses clearly specified that the Hayeses were liable for those duties which they had contracted to perform. Further, another portion of the agreement spe-

cifically prohibited the Hayeses from doing any act which would encumber the plaintiff's property with a lien. With respect to the changes which were not provided for in the contract, the plaintiff specifically noted those for which it would pay and gave no indication that it would pay for the others. Accordingly, we find that the trial court did not err in ruling that there was not probable cause to support the lien.

Because we find that the defendant's claims did not arise pursuant to an agreement with the plaintiff or with the consent of the plaintiff, we need not address the question of whether the lien was timely filed.

There is no error.

In this opinion the other judges concurred.