[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By application filed July 10, 1990, the plaintiff, Connecticut Light and Power Company ("CLP"), requested this court to discharge a mechanic's lien placed by Dicesare — Bentley Engineers, Inc. ("DBE") on property owned by CLP and described in schedule A of the application. CLP filed a certified statement of emergency, dated July 5, 1990, which stated that DBE had no right at law to claim such a lien.
CLP filed a memorandum in support of its application for discharge dated October 15, 1990, which asserted the following facts. On or about October 30, 1987, CLP entered into a purchase and sale agreement and net lease with The Strand, Ltd. ("The Strand"), which is affiliated with Collins Development Corporation ("CDC"). The agreement provided CT Page 556 that CLP would transfer the subject property to CDC contingent on CDC's obtaining certain planning, zoning and regulatory approvals, and that CLP would lease part of the property to The Strand to be used as a boatyard/Marina.
Subsequent to the agreement the president of DBE submitted to CDC an engineering proposal, which was revised and accepted on April 30, 1988. DBE performed from January 1988 to February 1990. DBE alleged its work was substantially completed, and on May 15, 1990 served a notice of intention to claim a mechanic's lien on CLP and CDC. DBE filed the lien against CLP within 30 days (May 17) and CLP filed its application for discharge on July 2, 1990.
The right to place a mechanic's lien on realty is created by Connecticut General Statutes 49-33, which states:
49-33 Mechanic's Lien. Precedence. Rights of Subcontractors.
 (a) If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of it appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim.
The purpose of the mechanic's lien is to give one who furnishes materials or services the security of the building and land for the payment of his claim by making such claim a lien thereon. HS Torrington Associates v. Lutz Engineering Co., 185 Conn. 549, 553 (1981).
Because the mechanic's lien is a creature of statute, a lienor must comply with the statutory requirements in order to perfect his claims. Id. Nonetheless, the provisions of the mechanic's lien law should be liberally construed so as to implement its remedial intent reasonably and fairly. Id.
 [T]he principles that guide our interpretation of mechanic's lien legislation are well settled. Although this legislation creates a statutory lien in derogation of the common law . . . its remedial CT Page 557 purpose to furnish security for a contractor's labor and materials requires a generous construction . . . generosity of spirit does not, however, permit departure from reasonable compliance with the specific provisions of the statute. (Citations omitted).
J.C. Penney Properties, Inc. v. Peter M. Santella Co., 210 Conn. 511,514 (1989). See also Camputaro v. Stuart Hardware Corp., 180 Conn. 545. The statute's "remedial purpose to furnish security for a contractor's labor and materials requires a generous construction." Id. at 550.
Two categories of persons are entitled under the statute to liens against land they have improved. Hall v. Peacock Fixture Electric Co., 193 Conn. 290 (1984).
 Those who provide services or materials in connection with the construction of a building are entitled to claim a lien on the land that they have improved if they fall into one of two categories. Lienors are protected if they have a claim either (1) by virtue of an agreement with or the consent of the owner of the land, or (2) by the consent of some person having authority from or rightfully acting for such owner in procuring labor or materials.
Id. at 293. Although a principal can be bound by the consent of his agent, the principal "is only `bound by, and liable for, the acts which his agent does with or within the actual or apparent authority from the principal, and within the scope of the agent's employment.'" Newtown Associates v. Northeast Structures, Inc., 15 Conn. App. 633, 637-38 (1988). "Apparent authority thus must be determined by the acts of the principal rather than by the acts of the agent." Id.
The lienor has the burden to show probable cause to sustain the validity of the lien, not that he will prevail. Ledgebrook Condominium Association, Inc. v. Lusk Corp., 172 Conn. 577, 584 (1977). After the lienor establishes probable cause, the plaintiff seeking to discharge the lien has the burden "to prove, by clear and convincing evidence, the invalidity of the lien." Pomarico v. Gary Construction, Inc,5 Conn. App. 106, 111 (1985).
The probable cause standard under the mechanic's lien statute is the same as that under Connecticut General Statutes 52-278a et seq. (the prejudgment remedy statute). "The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence, and judgment, under the circumstances, in entertaining it." Pero Building Co. v. Smith, 6 Conn. App. 180, 182-83 (1986) (italics in original). The court's role at the hearing is to determine the probable CT Page 558 success by "weighing the probabilities," Michael Papa Associates v. Julien, 178 Conn. 446, 447 (1979).
A. Probable Cause Requires Consent or Agreement
"In order to demonstrate probable cause to support a lien upon the land he has improved a person must first show that he is one of those persons entitled to claim a lien." Newtown Associates,15 Conn. App. at 637. To qualify under the statute, moreover, the lienor must have furnished materials or services pursuant to either an express or implied agreement with, or the consent of, the landowner or his agent. Connecticut General Statutes 49-33a; see also Hall, 193 Conn. at 293. Because the lienor can only sustain probable cause with a bona fide belief "in the existence of facts essential under the law," Pero Building Co.,6 Conn. App. at 182-83, there can be no probable cause without some evidence of consent or agreement.
In both its Memorandum in Support and Supplemental Memorandum in Support, CLP argues that there was neither consent or an agreement. "DBE failed to prove that its claim against CLP's land is either by virtue of an agreement with our consent of some person having authority from or rightfully acting for CLP in procuring its services." CLP's Supplemental Memo in Support, October 29, 1990, p. 8. In its Memorandum in Opposition, dated October 15, 1990, DBE argues it falls under the statute because it "provided services in the redesign of a marina and in connection with obtaining valuable permits for the property . . ." Id. at 8. Section 2A(1) of the Purchase Agreement required CDC, as the buyer, to apply for and bear all costs to secure planning and zoning approval for development of the subject property. See Defendant's Exhibit O (Purchase Agreement). Therefore, DBE's contract with with CDC, not CLP.
Although CDC may have contracted for DBE's services to secure planning and zoning approval pursuant to the purchase contract, the contract could in no way be construed as an agreement or consent by CLP or its agent for DBE's services. Even if CLP had knowledge of work performed on the property before it transferred title to CDC, there was no agreement indicating that the [title] owner shall or may be liable for materials or labor. St. Catherine's Church Corp. v. Technical Planning Associates, Inc., 9 Conn. App. 682, 684 (1987).
Section 6.01 of the Net Lease Agreement between CLP and The Strand does allow The Strand to make alterations and improvements, but only at its "sole cost and expense." It is found this section of the lease fails to satisfy the requirements for agency delineated in Beckenstein v. Potter Carrier, Inc., 191 Conn. 120 (1983). The three elements required to show agency are "(1) a manifestation by the principal that the agency will act for him; (2) acceptance by the agent of the undertaking and (3) an understanding between the parties that the principal will be in control of the undertaking." Id. at 133. CT Page 559
DBE itself retreated from the consent/agency argument in its Supplemental Reply Memorandum, November 5, 1990, p. 9. "[DBE] is not claiming that it has a right to a mechanic's lien based upon the knowledge and consent of the vendor, CLP, although it reserves the right to pursue such a claim at the trial of this matter." Id. Instead, DBE argues "it is entitled to a mechanic's lien as a matter of law and equity, because in accordance with [Conn. Gen. Stat.] 49-35b DiCesare-Bentley has met the burden of showing that there is probable cause to sustain the lien . . . ." Id. However, that absent evidence of consent or agreement, probable cause cannot be established. Therefore, the court will now consider DBE's equity argument.
B. Equitable Conversion
DBE argues that CDC's financial problems make it unlikely that DBE can recover from either CDC or its affiliate, the Strand Id. at 10-11. DBE argues, however, that it can recover from CLP under a theory of equitable conversion. "The question of law before the court is whether a mechanic's lien can attach the equitable interest of a contract vendee who, under the purchase agreement, has the right to perform development activities . . . ." Id. at 12.
DBE argues that CLP's consent or agreement is irrelevant if CDC consented or agreed to work as envisioned by the purchase agreement Id. at 13. The line of cases cited by DBE do allow attachment to the extent of a vendee's equitable interest in property, but only when the purchase agreement requires the vendee to improve the land during the executory period.
In Hooker v. McGlone, 42 Conn. 95 (1875), the landowner, Brooks, consented to have a building constructed on his land to be used in a proposed manufacturing business. McGlone, his partner in the venture and acting as his agent, obtained bricks from Hooker, a brickdealer's agent. A lien was attached in Hooker's name as agent, although McGlone was unfamiliar with the principal, based on McGlone's equitable interest, which merged with his legal interest when he later purchased the land from Brooks. The court upheld the lien.
In Hillhouse v. Pratt, 74 Conn. 113 (1901), the court upheld the lien when defendant took possession under a purchase agreement that required him to build a house before title could pass. Similarly, in Hannan v. Handy, 104 Conn. 653 (1926) the purchaser was required by contract to complete construction of a building on that property before title would pass. On these facts the court held that "[t]he consummation of the agreement to sell, by the giving of the deed, after the plaintiff's lien attached but before the certificate was filed, does not affect the validity of the lien." Id. In Seipold v. Gibbud, 110 Conn. 392 (1930), the court also let stand a lien against the vendor because the purchase agreement specifically required the vendee to complete the construction of a house during the executory period. CT Page 560
In Bridgeport Peoples Bank v. Palaia, 115 Conn. 357 (1932), the court refused to give priority to liens arising before title passed because the sales contract did not require the purchaser to perform any work, even though the vendors gave their consent.
 An equitable interest which would have supported these liens would have existed if a part of the contract between Palaia and the owners had been that Palaia should take immediate possession of the property and proceed with the work of construction. The liens would then have attached to the extent of his interest.
 It cannot be said that the mere consent to start work constituted an implied contract that he should build thereon or that by beginning work he could create liens on the vendors' land. Mechanics' liens, under our statute, arise where the work is done by authority of the landowner himself, "or of some person having authority from or rightfully acting for such owner in procuring such labor or materials."
Id. at 360.
The court finds that neither the purchase agreement (Exhibit Q) nor the Net Lease (Exhibit R) in this case require CDC/The Strand to improve the land before title will pass. The purchase agreement merely states: "The parties intend that the Buyer shall apply for [and bear the cost of] planning and zoning approval for construction of the improvements on the property . . . ." Purchase Agreement, 2A(1). The Net Lease merely allows The Strand to make changes or alterations in the premises at its own expense. Net Lease, 6.01. Although 6.03 reserves for CLP the right to remove liens against the property should The Strand fail to do so. Net Lease, 6.03(b).
 If Tenant shall fail to cause such lien to be discharged within the period aforesaid, then in addition to any other right or remedy, Landlord may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien, by deposit or by bonding proceedings, and in any such event Landlord shall be entitled, if Landlord so elects, to compel the prosecution of an action for the foreclosure of such lien by the lienor and to pay the amount of the judgment in favor of the lienor with interest, costs and allowances.
CT Page 561
Merely requiring the buyer to bear the cost of obtaining planning and zoning approval does not qualify DBE for a lien based on equitable conversion. Neither CDC nor The Strand were specifically required by contract or lease to put any improvements on the land.
The case of Torno Donaher, Inc. v. Covino, 19 Conn. Sup. 55
(1952) does not apply. In Torno Donaher the defendant, Covino, agreed to lease premises to a tenant contingent on the tenant's success in obtaining a liquor permit. To that end the tenant contracted with the plaintiff for renovations. Although the landlord never expressly agreed to the renovations, he reviewed and approved the architect's plans before construction. The court deemed this approval to constitute consent. Id. at 59. In the present case, Exhibits J (letter dated February 6, 1990 from DBE to Northeast Utilities re: dock layout sketches) and K (acknowledgment of receipt dated February 9) indicate that CLP (Northeast Utilities) did review the proposed layout. Exhibit K indicates, moreover, that CLP acknowledged that the review "has become an integral part of our ongoing negotiations with [CDC] . . . and your input is very valuable to us." This case differs from Torno Donaher, however, in that CLP reviewed the plans after DBE performed and just before DBE terminated its services in February 1990. Therefore, the court finds that DBE did not provide engineering services in reliance on CLP's "consent" or "approval."
In Sisk v. Zukowski, 3 CSCR 641 (June 29, 1988, O'Neill, J.), the court held a lien valid although "[no] physical work of any kind has been performed on the site. . . ." The court held that the preparation of preliminary development plans constituted improvement on the land although no physical work was performed. In Sisk, however, the express written agreement for "`civil engineering services including alternative plans for the development of this parcel,'" was between the same parties who were plaintiff and defendant in the lien action. In the present case there was no such agreement between CLP and DBE, unless the court construes Sisk in light of Torno Donaher to hold CLP impliedly liable. Although there might be some merit to this position, the court finds that in Torno Donaher the landlord impliedly consented before construction began, whereas here CLP merely reviewed the plans after DBE had been on the job more than two years.
The mechanic's lien is ordered discharged, however DBE is not foreclosed from pursuing other remedies to attachment or lien monies being held by CLP under the contract.
RYAN, J.P., JUDGE