[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On August 12, 1992, the plaintiff, Gerber Hurley, Inc. ("Gerber") brought this action in two counts against CCC Corp. ("CCC") (first count) and Hector Cyr ("Cyr"), individually, (second count) alleging payment due and owing for goods sold and delivered on an open account pursuant to a credit agreement signed by Cyr and attached to the complaint as Exhibit B. Exhibit A to the complaint consists of a copy of a document entitled "Gerber accounts receivable aged trial balance" showing $141,612.08 due on account of CCC Corp. and smaller orders charged to General Roofing Co., which is listed under a separate account number at the bottom of the page.
The Gerber Credit Application, appended to the complaint, shows that on March 27, 1991, Cyr entered into a credit agreement with Gerber. Cyr signed the credit application twice: once as President of CCC, 324 Governor Street, East Hartford, CT, and once individually, as a personal guarantor of payment on the account. Listed as "owner(s), partner(s), stockholder(s)" were Hector Cyr, Norman Cyr and Gloria Chilson; all of 324 Governor Street, East Hartford, CT.
Exhibit A, as stated above, shows an aged trial balance for an amount due and owing of $141,612.08 on the account of CCC for orders placed beginning on March 27, 1991 continuing through October 31, 1991.
By pleading, Cyr denied the allegations in count two of the complaint and claims the debt is owed by General Roofing, the corporation listed below CCC on the aged account trial balance. Further, since CCC is not liable for the debt, Cyr claims, neither is he personally liable.
Similarly, responding to count one, CCC denied the allegations claiming that the goods purchased on credit were CT Page 5099 purchased by and for the benefit of General Roofing. Moreover, Gerber should have known that. Extending this rationale further, CCC claims, Gerber should also have known Cyr had no authority to bind CCC, a corporation.
On April 19, 1993, prior to trial, Gerber filed its claims of law. Gerber claims all of the following: express authority, implied authority, apparent authority and that the president's knowledge is imputed to the corporation.
CCC submitted a trial memorandum of law claiming, inter alia, that the liability of a corporation depends upon the specific powers of agency conferred upon the president. Further, Cyr has been President and sole stockholder of General Roofing since January, 1990. Cyr was also President of CCC, but only a one-third stockholder. CCC also asserts that the other two CCC stockholders, Norman Cyr and Gloria Chilson neither authorized nor were aware of the sales to CCC. Therefore, the authority conferred by CCC should be measured according to the principles of apparent authority.
On April 26, 1993, after trial, Gerber filed a motion to amend the complaint in accordance with Practice Book 178 to conform the allegations of the complaint to the evidence adduced at trial. The amended complaint makes the following corrections concerning dates and dollar amounts to paragraphs one and three of count one: Between March 27, 1991 and October 31, 1991, CCC became indebted to Gerber in the amount of $145,617.40, which amount includes interest of $32,131.54 to accrue thereafter at the rate of $66.76 per day.
In Connecticut the president of a corporation has no inherent authority by virtue of that office to bind the corporation. Cohen v. Holloways' Inc., 158 Conn. 395, 406,260 A.2d 573 (1969). "Whether a corporate officer is authorized to act on behalf of a corporation is a question of fact to be resolved by the trier." Czarnecki v. Plastics Liquidating Co.,179 Conn. 261, 268, 425 A.2d 1289 (1979). The first question the court must resolve is whether, as president, Cyr's actions in entering into the credit agreement to purchase goods and materials on behalf of CCC was an authorized or unauthorized act.
"The corporation is only liable for the acts of its president if it is shown that his acts are so related to his duties as president that they may reasonably be held to have been CT Page 5100 done in the prosecution of the business of the corporation and while he was acting within the scope of his employment." Baptist v. Shanen, 145 Conn. 605, 608-09, 145 A.2d 592 (1958). Thus, the liability of a corporation for the acts of its president depends upon whatever specific powers of agency have been conferred upon the president. Lettieri v. American Savings Bank, 182 Conn. 1,8, 437 A.2d 822 (1990). A president's "authority so to act may be found in the charters, bylaws, in a direct vote of the corporation board of directors, or in usage acquiesced in by the corporation." Perry v. Simpson Waterproof Manuf. Co., 37 Conn. 520,534 (1971).
In its claims of law, Gerber submits that Cyr acted with express authority under the bylaws of the corporation. Gerber claims that Cyr's authority to act for the corporation could be implied. "Implied authority is actual authority circumstantially proved. It is the authority which the principal intended his agent to possess." Czarnecki, supra, 268-69. If in fact Norman Cy and Grace Chilson intended to confer authority upon Cyr to act on CCC's behalf, then CCC is bound by the credit agreement.
Finally, Gerber claims Cyr wears the mantle of apparent authority in regard to CCC. "The president is clothed with apparent authority where the corporation permits that officer to habitually act for the corporation in making contracts or doing other acts, or to manage business generally although no authority may have been expressly conferred upon that officer." 2A Fletcher Corporations 595 (Perm. Ed. 1986 Rev.).
The principles that determine whether an agent has apparent authority derive "not from the acts of the agent but from the acts of his principal." Lettieri, supra, 8. In order to hold that Cyr acted with apparent authority in entering into the credit agreement with Gerber, the court must consider the following elements:
 [T]he acts of the principal must be such that (1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that CT Page 5101 the agent had the necessary authority.
Lettieri, id.
With regard to the first element, the court finds that there was substantial evidence to support the conclusion that CCC had invested Cyr with unfetted managerial control, therefore Gerber has met the first element of proof for a finding of apparent authority. The court may consider [1] the absence of any bylaws limiting Cyr's authority, [2] the fact that Cyr is president of both CCC and General Roofing from whom he claims the debt is due and for whom he is the sole stockholder, [3] Exhibit E (trial list) meeting minutes of CCC, and [4] absence of any evidence as to the direct involvement of either of the other two CCC stockholders, Norman Cyr and Grace Chilson.
As to the second element of the apparent authority test, the facts show that Gerber acted in good faith based upon the actions or inadvertences of the principal. Newton Associates v. Northeast Structures, Inc., 15 Conn. App. 633, 639, 546 A.2d 310
(1988). "The apparent authority of the agent which thus binds the principal, beyond that actually conferred, must always be deduced from authorized acts of the agent, and from surrounding facts with a knowledge of which the principal is chargeable, and not from the acts of the agent himself in excess of his authority and of which the principal had no notice." Hollywyle Assn., Inc. v. Hollister, 164 Conn. 389, 396, 324 A.2d 247
(1973). Did Gerber, acting in good faith, understood CCC's conduct, in light of the surrounding circumstances, to vest Cyr with authority to act on its behalf? The court reaches that determination [1] although Cyr signed the credit agreement individually, he also signed on behalf of CCC. Nowhere in the agreement is the name of General Roofing mentioned, for whose benefit Cyr claims he placed the orders, [2] the materials were delivered to CCC, [3] invoices were sent to CCC, not to Cyr individually, [4] Cyr continued to place orders over a period of seven months without objection from the other two stockholders who presumably were aware that the reason CCC continued to function was because Cyr ordered supplies and [5] Gerber's "aged trial balance" shows separate account numbers for CCC and General Roofing. The court finds based on any of the factors listed above that Gerber in good faith relied on its credit agreement with CCC and had every reason to do so in light of the surrounding circumstances, the court finds that Cyr had the necessary authority to act on CCC's behalf. CT Page 5102
In support of its claim of Cyr's authority, Gerber also submits a claim of law attributing Cyr's knowledge to CCC.
"`[A] principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or upon which it is his duty to give the principal information.'" E. Udolf, Inc. v. Aetna Casualty Surety Co., 214 Conn. 741, 747, 573 A.2d 1211 (1990). Therefore, the knowledge of an agent who is acting within the scope of his authority and in concern of a business matter, is considered knowledge of the principal. Id.
The court finds despite Cyr's unauthorized acts, then the following analysis applies.
"A corporation will also be bound by the unauthorized acts of its president if it subsequently ratifies those acts, or so conducts itself with reference to them as that it ought to be estopped from denying his authority; and generally the doctrine of estoppel will apply whenever the corporation receives and retains the benefit of the contract." Perry, supra, 534. "[I]f the corporation through the officer or body having authority to act, acquires or is charged with knowledge of an unauthorized act . . . and does not repudiate it within a reasonable time, but without objection acquiesces therein, it is bound by the unauthorized act."
Notwithstanding Cyr's argument that the materials were ordered for the benefit of General Roofing, the court finds that CCC, with knowledge of the facts, accepted and retained the benefits of the goods and supplies provided by the unauthorized act, it thereby ratified the credit agreement and will be estopped to deny ratification.
However, the General Roofing Company submitted three checks to Gerber, Defendant's Exhibit Two. The checks were issued by General Roofing to Gerber without any marking indicating where the checks should be applied. The plaintiff claims he was issued an oral order to apply the checks to CCC. The court cannot find any valid argument to justify that claim. Therefore, the court gives CCC credit of $30,000 dollars against the outstanding debt.
Therefore, utilizing the balance as shown on plaintiff's CT Page 5103 balance sheet which amounts to $141,612.08, deducting the $30,000 dollars received and applied erroneously to the CCC Corporation, the court finds for the plaintiff in the amount of $111,612.08 with interest and costs, interest from the time of this judgment only, as the interest has been factored in by the plaintiff in his demand.
Philip E. Mancini, Jr. State Trial Referee