[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION STATEMENT OF THE CASE
This is an action instituted by the plaintiff, Unifirst Corporation, against the defendant, Mark Ford Mercury, Inc. seeking damages against the defendant for the defendant's alleged breach of a contract involving the rental of employee uniforms for the defendant's business. The first count of the complaint is based on breach of contract and the second count is for unjust enrichment. The case was tried on January 30, 1997. The court makes the following findings.
The defendant is an automobile dealership doing business in Danbury, Connecticut. In July 1980, the plaintiff's predecessor, Interstate Uniform Services Corporation, entered into a contract with the defendant's predecessor, McLaughlin Ford, under which uniforms were provided by Interstate to McLaughlin Ford's employees. Although this contract expired in December 1982, the parties continued their relationship without a formal written agreement. Subsequently, Interstate was acquired by the plaintiff, Unifirst Corporation; and McLaughlin Ford became the defendant, Mark Ford Mercury, Inc.
In or about July 1990, the defendant informed the plaintiff about the name change to Mark Ford Mercury, Inc. and that the emblems on the uniforms provided by the plaintiff had to be changed accordingly. On July 16, 1990, Julio DaCruz, a service manager of the plaintiff, responded to this call and made a visit to the defendant's business. He talked to the defendant's employee, Dawn DeFonce. DaCruz explained to DeFonce that a new written service agreement was needed. He reviewed the service agreement with her and explained its basic terms. DeFonce signed the agreement on behalf of "Mark Ford." The letter was signed by DaCruz and was later signed by plaintiff's general manager. (Exhibit A).
This contract signed in July 1990 required the plaintiff to provide work clothes to the defendant on a weekly basis at specified prices per person. Mark Ford was required to clean and maintain the clothes and to replace any clothing damaged by normal wear and tear. The service agreement would remain in effect for three years, except that either party could terminate the agreement at any time before the expiration of the term upon at least ninety days notice. If not terminated, the agreement would automatically renew for an additional three year term. Lastly, the agreement provided that "if customer [Mark Ford] terminates prior to agreement expiration, customer agrees to CT Page 6833 purchase merchandise at replacement cost then in effect or 50 percent of the balance of the term of this agreement, whichever is greater."
When DeFonce signed the agreement, she was a service clerk in the defendant's service department. She was not a manager or a supervisor of the defendant company; nor was she an officer or director. The evidence indicates that the defendant had not given her authority to sign contracts on behalf of the company, although she was one of the primary contact people that the plaintiff dealt with concerning the delivery of the uniforms both before and after the signing of the contract.
In December 1990, the plaintiff received a telephone call from the defendant indicating that the defendant was talking with other clothing companies and wanted to see the contract between the plaintiff and the defendant. DaCruz testified that he responded to this telephone call by visiting the defendant's business on December 6, 1990 and speaking with its president, Mark Paladino. DaCruz testified that during this meeting, he gave a copy of the July 16, 1990 contract to Paladino. Paladino indicated that he was the new owner and wanted to look the contract over. DaCruz left the meeting believing Paladino had no problem with the contract or plaintiff's services, and that the parties would continue working together under the contract terms. Paladino testified that he had no recollection of the December 6, 1990 meeting and did not remember receiving a copy of the contract during this meeting. The court credits the testimony of DaCruz on this issue and finds that the meeting took place and that Paladino received a copy of the contract at that time.
In August 1991, Paladino again contacted the plaintiff. Paladino informed the plaintiff that he had received uniform rental prices from another company and was considering whether to retain the services of this new company. Paladino requested the plaintiff to provide him with new price quotes for comparison. The plaintiff responded to this request by a letter dated August 12, 1991 and provided with this letter another copy of the July 16, 1990 rental agreement. By letter dated September 10, 1991, Paladino informed the plaintiff that the defendant was terminating plaintiff's services immediately.
After the termination of the rental agreement, the plaintiff made two demands on the defendant. First, the CT Page 6834 plaintiff sent the defendant an invoice dated October 31, 1991 listing clothing not returned by the defendant and imposing a charge of $561.16. (Exhibit H). Second, plaintiff requested payment of 50 percent of the balance due under the remaining term of the agreement because of the defendant's early termination of the contract. This "early termination" charge was $10,937.37. Defendant did not pay these charges and this lawsuit ensued.
DISCUSSION
The defendant's primary defense to this lawsuit is that Dawn DeFonce did not have authority to execute the rental agreement on defendant's behalf, and therefore, the defendant is not liable under the contract's terms. Defendant insists that Ms. DeFonce was a clerk without any managerial or supervisory authority. Although the plaintiff dealt with her when deliveries were made, the plaintiff's employees also dealt with a Pat Walsh who was the defendant's service manager and DeFonce's supervisor. In response, the plaintiff argues that DeFonce had apparent authority to execute the contract, and in any event, the defendant ratified the contract by its subsequent actions and its failure to repudiate the contract's terms. The Court agrees with the plaintiff.
Apparent authority is a doctrine developed by the courts to protect, under certain circumstances, persons dealing with an agent who lacks express authority. Apparent authority is the authorization which a principal, through his own acts or inadvertences, causes or allows a third person to believe his agent possesses. The existence of apparent authority is premised on the acts of the principal, not on the acts of the agent, and must be determined by an evaluation of all the circumstances of the transaction. To make the principal liable for a contract on the ground that the agent had the apparent authority to execute the contract on the principal's behalf, the facts must establish that the principal held the agent out as possessing the requisite authority to execute the contract; and the party seeking to bind the principal must have acted in good faith reliance on that authority. See generally, Tomlinson v.Board of Education of City of Bristol, 226 Conn. 704, 734-735,629 A.2d 333 (1993); Edart Truck Rental Crop. v. B. Swirsky andCompany, 23 Conn. App. 137, 139-140, 579 A.2d 133 (1990).
The court finds that the course of conduct between the CT Page 6835 parties established DeFonce's apparent authority to execute the contract and the plaintiff's reasonable reliance on this authority. DeFonce was the defendant's employee who was authorized by the defendant to contact the plaintiff about the rental orders generally and about changing the emblems on the uniforms specifically. She was an employee whom the plaintiff routinely communicated and dealt with regarding the services provided to the defendant. The defendant voluntarily and knowingly placed DeFonce in a position whereby an ordinary person, conversant with the particular business practices at issue, was justified in presuming that DeFonce had authority to discuss the rental services and execute the contract. Persons doing business with a corporate entity such as the defendant should not be required to do so at their peril to ascertain the exact scope of the authority of the corporation's agents.
Moreover, the court finds that the defendant's president, Paladino, became fully aware of the contract by December 1990. The defendant did not question the contract at that time or take any action to repudiate it. The defendant received and paid for the rental services for months afterwards and only terminated the contract when it received a better price from another rental company. Under these circumstances, the defendant accepted the benefits of the contract and is estopped from repudiating it or denying its ratification. See generally, Cohen v. Holloways,Inc., 158 Conn. 395, 407-409, 260 A.2d 573 (1969).
According to the terms of the contract, upon early termination, the defendant was to pay for the "merchandise at replacement costs then in effect or 50% of the balance of the term of this agreement, which ever is greater." The Court accepts the plaintiff's evidence that $10,937.37 represents 50% of the balance of the contract and that this amount exceeded the replacement cost of the merchandise. The Court also finds that the defendant failed to return clothing having a value of $561.16. As to the second count of the complaint, the Court further finds that the plaintiff has failed to establish facts to support its claim for unjust enrichment, especially in light of the Court's finding of the existence of an express contract.
CONCLUSION
Therefore, judgment enters in favor of the plaintiff and against the defendant on the first count of the complaint for $11,498.53. Judgment enters in favor of the defendant and CT Page 6836 against the plaintiff on the second count of the complaint.
Dated this 27th day of June, 1992.
STEVENS, JUDGE