## EDART TRUCK RENTAL CORPORATION v. B. SWIRSKY AND COMPANY, INC.
### (8348)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued June 4—decision released September 4, 1990

*Frederick W. Krug,* for the appellant (defendant).

*Kimball Haines Hunt,* for the appellee (plaintiff).

DUPONT, C. J. This is an appeal by the defendant from a judgment by the trial court awarding rental payments, finance charges and attorney's fees to the plaintiff. The defendant claims that the trial court should not have (1) found that the defendant's employee had the apparent authority to bind the defendant to a rental agreement, (2) concluded that the plaintiff's claims were not barred by equitable estoppel, (3) held that the small print format of the contract did not rise to the level of unconscionability, and (4) found, on the defendant's counterclaim, that the defendant failed to prove a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. (CUTPA). We affirm the trial court's judgment.

The trial court found certain facts relevant to its determination. In June, 1986, Joseph Swirsky, a director of the defendant corporation and a person of considerable business experience, determined that the company needed to rent a large truck in order to carry on its paper recycling business. He arranged for the rental of the truck by telephoning the plaintiff and discussing rental terms with the plaintiff's branch manager. Shortly after this conversation, Swirsky sent one of the company's truck drivers to pick up the truck, instructing the driver to sign whatever papers were necessary to obtain the truck.

The driver signed the plaintiff's rental agreement, a form contract that has its substantive provisions printed in very small type on its reverse side. As instructed by the rental agent, the truck driver put the agreement in the glove compartment of the truck. Swirsky knew that the agreement was in the truck, but he made no effort to read it. The defendant paid rent for the truck as it became due.

In October, 1986, the vehicle developed mechanical problems and was returned to the plaintiff. Swirsky sent the same driver to pick up a replacement truck. Once again the driver signed an agreement and placed it in the truck's glove compartment, where it, like the first agreement, remained unexamined by Swirsky. Later in October, the replacement truck was severely damaged in an accident while being operated by the defendant's driver. It was returned to the plaintiff for repairs. Pursuant to the rental agreement, the defendant was billed $6638.74 for continuing rent while the truck was disabled. The defendant's insurance policy did not cover rent for the time of the truck's disability. The defendant refused to pay these rental charges. The issues in this case revolve around the provision in the agreement requiring the defendant, as the renter of the truck, to pay rent while the truck is out of service and undergoing repairs.

The defendant first claims that the trial court should not have found that the defendant's driver had the apparent authority to bind the corporation to the plaintiff's rental agreement by his signature. Apparent authority is derived not from the acts of the agent but from the deliberate or inadvertent acts of the principal. *Norwalk* v. *Board of Labor Relations,* 206 Conn. 449, 451, 583 A.2d 694 (1988); *Lettieri* v. *American Savings Bank,* 182 Conn. 1, 8, 437 A.2d 822 (1980); *Newtown Associates* v. *Northeast Structures, Inc.,* 15 Conn. App. 633, 638, 546 A.2d 310 (1988).

Apparent authority has two elements. First, it must appear from the acts of the principal that "the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority . . . ." *Nowak* v. *Capitol Motors, Inc.,* 158 Conn. 65, 69, 255 A.2d 845 (1969). Second, the party seeking to bind the principal must have acted in good faith reliance on that appear-

ance of authority. Id. Courts have developed the doctrine of apparent authority "to protect, under proper circumstances, a third person in his dealings with an agent who lacks express authority." *Keeler* v. *General Products, Inc.,* 137 Conn. 247, 251, 75 A.2d 486 (1950).

"The issue of apparent authority is one of fact, requiring the trier of fact to evaluate the conduct of the parties in light of all the surrounding circumstances. . . . Only in the clearest of circumstances, where no other conclusion could reasonably be reached, is the trier's determination of fact to be disturbed." (Citations omitted.) *Lettieri* v. *American Savings Bank,* supra, 9; see also *Newtown Associates* v. *Northeast Structures, Inc.,* supra; *Bank of Montreal* v. *Gallo,* 3 Conn. App. 268, 273, 487 A.2d 1101 (1985). Apparent authority may be derived from a course of dealing. 3 Am. Jur. 2d, Agency § 79.

In this case, the defendant's driver twice picked up trucks that had been rented from the plaintiff. All rental charges were paid without complaint while the trucks were in service. The plaintiff, therefore, could have reasonably concluded that the driver had the authority to act for the defendant in this transaction. As a result, the plaintiff entrusted to the driver an expensive vehicle, which was subsequently severely damaged while in the defendant's possession.

The defendant also claims that the plaintiff lacked the requisite good faith reliance on the appearance of authority because the plaintiff did not review the contract with the driver and, rather than instructing the driver to deliver the document directly to Swirsky, told him to keep the agreement in the glove compartment to prove that the truck was a leased vehicle. Swirsky, however, knew that the driver had signed a form that was kept in the truck, and could have read it at any

time. A "principal cannot be justified in willfully closing his eyes to knowledge." 1 F. Mechem, Agency (2d Ed.) § 404.

Considering the circumstances of this case as a whole, the trial court had an ample factual basis to find that the defendant's driver had the apparent authority to bind the defendant to the rental agreement in its entirety.

In its second claim, the defendant asserts that the plaintiff should be estopped from enforcing the rental agreement because the plaintiff's use of a small print contract, combined with its failure to explain the contents of the contract, is a deceptive practice. "Estoppel 'require[s] proof of misleading conduct by one party resulting in detrimental reliance by the other.' *Latimer Point Management Corporation* v. *Anderson,* 1 Conn. App. 310, 313, 471 A.2d 670 (1984)." *Hunt* v. *Friedman,* 6 Conn. App. 720, 722, 507 A.2d 498 (1986). The plaintiff's rental agreement is very hard to read, and not designed to enlighten an unwary consumer. There was, however, no detrimental reliance on that document because the defendant knew of its existence and location and did not attempt to read it or discover its contents by any other means. The court, therefore, correctly found that the defendant had the knowledge, means and opportunity to learn the document's provisions.

"We cannot predicate an estoppel in favor of one whose own omission or inadvertence has contributed to the problem at hand." *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 565, 316 A.2d 394 (1972). The party claiming an estoppel "must show that [it] exercised due diligence to know the truth, and that [it] not only did not know of the true state of things but also lacked any reasonably available means of acquiring knowledge." *S.H.V.C., Inc.* v. *Roy,* 188 Conn.

503, 511, 450 A.2d 351 (1982). Estoppel is a question of fact that is determined by the trial court. *New York Annual Conference* v. *Fisher,* 182 Conn. 272, 300, 438 A.2d 62 (1980); *Latimer Point Management Corporation* v. *Anderson,* supra. Thus, this court will not disturb the finding of the trial court on this matter unless it is clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Latimer Point Management Corporation* v. *Anderson,* supra. The finding in this case is supported by the evidence and, therefore, the court's conclusion that estoppel did not bar the plaintiff's claim is correct.

In its third claim the defendant asserts that the plaintiff's contract is unconscionable because (1) it enables the plaintiff to impose rental payments unlimited by time, and (2) the plaintiff did not specifically inform the defendant of the continuous rental payment provision.

The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise. J. Calamari & J. Perillo, Contracts (3d Ed.) § 9-40. Unconscionability is a question of law to be determined by the court in light of all the facts and circumstances of the case; *Iamartino* v. *Avallone,* 2 Conn. App. 119, 125, 477 A.2d 124, cert. denied, 194 Conn. 802, 478 A.2d 1025 (1984); and "is thus reviewable by us, unlimited by the 'clearly erroneous' standard." Id. The Uniform Commercial Code, as adapted by Connecticut courts, contains a basic test for examining a claim of unconscionability. That test is whether, in light of the general commercial background and the commercial needs of the particular trade, " ' "the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." ' " *Texaco, Inc.* v. *Golart,* 206 Conn. 454, 462, 538 A.2d 1017 (1988); Uniform Commercial Code § 2-302, comment 1; see also *Bennett* v. *Fun & Fitness of Silver Hill,* 434 A.2d 476, 481 (D.C. App. 1981).

The clause in the contract that allows the plaintiff to continue to hold the defendant liable for rent after the truck has been disabled is a means of allocating the risk of loss. The fact that parties contract to allocate a risk of loss is not unconscionable per se. See General Statutes § 42a-2-509. A party seeking to void such a clause must show that the clause bears no reasonable relation to the risks involved. *Phillips Machinery Co. v. LeBlond, Inc.,* 494 F. Sup. 318, 324 (N.D. Okla. 1980); *Tulowitzki v. Atlantic Richfield Co.,* 396 A.2d 956, 960 (Del. 1978). The defendant here made no such showing, nor did it claim a lack of good faith on the part of the plaintiff in not having the repairs made promptly. The payments required for the period the truck was undergoing repairs were neither a penalty against the defendant nor a windfall to the plaintiff, but a fair measure of the loss the plaintiff sustained by having a truck out of service. We decline to find, on the basis that the rental payments were open-ended as to the duration of the payments, that the contract was substantively unconscionable.

The defendant's other claim of unconscionability is that the defendant was not informed of the "continuous" rental payment provision. If the substantive provisions of a contract are hidden in a maze of fine print, if no effort is made to alert the other party directly to the existence of the provisions, and if the parties had unequal bargaining power, a claim of unconscionability might be viable. Here, however, the parties were not an uneducated consumer and a powerful business entity. *Williams v. Walker-Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C. App. 1965). Under our test for unconscionability, the plaintiff's actions must be weighed against the defendant's business experience, the business practices of the community, and the relatively equal bargaining power of the parties. See *Texaco, Inc. v. Golart,* supra.

The defendant's driver testified that he had to sign a lease each time he picked up a truck no matter where he worked. The defendant could reasonably have known, therefore, that, in accordance with the practice of its business, the driver had signed a lease and had a copy of it. Swirsky testified that he telephoned several rental companies to discuss renting a truck before deciding that Edart had the best terms. He thus demonstrated that he was knowledgeable about bargaining in an open market. Significantly, Swirsky also testified that similar continuous payment provisions had been included in each of the lease-purchase contracts he had issued during his previous twenty year career in truck sales. In fact, review of the record reveals that Swirsky's basic complaint was not about the continuous rental provision but that the plaintiff did not tell him to get additional insurance to cover such payments. In light of such evidence, the defendant cannot successfully claim that it had no meaningful choice in the contract or that it was "unfairly surprised" by the continuous rental payment provision.

Finally, the defendant claims that the trial court should have found that the small print format of the plaintiff's contract was a violation of CUTPA. General Statutes § 42-110b provides in part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Connecticut courts have adopted the federal criteria for determining when a practice is unfair. These are: " '(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3)

whether it causes substantial injury to consumers [(competitors or other businessmen)].' " *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 568, 473 A.2d 1185 (1984), quoting *Conaway* v. *Prestia,* 191 Conn. 484, 492–93, 464 A.2d 847 (1983). The question is whether the conduct of the plaintiff, namely, the printing of the contract terms in very small type, constitutes an unfair or deceptive trade practice. See *A. Secondino & Son, Inc.* v. *LoRicco,* 215 Conn. 336, 343, 576 A.2d 464 (1990).

In spite of the defendant's assertions to the contrary, "[w]hether a practice is unfair and thus violates CUTPA is an issue of fact." *DeMotses* v. *Leonard Schwartz Nissan, Inc.,* 22 Conn. App. 464, 466, 578 A.2d 144 (1990); see also *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 238, 520 A.2d 1008 (1987). In this case, the trial court determined that, under the facts found, the plaintiff's use of a small print contract did not amount to an unfair trade practice. The defendant also failed to establish that the contract was unconscionable, so that it cannot predicate a CUTPA claim on that theory. Compare *Murphy* v. *McNamara,* 36 Conn. Sup. 183, 189–91, 416 A.2d 170 (1979). We, therefore, hold that the trial court could have reasonably concluded that there was no CUTPA violation involved in this transaction. *DeMotses* v. *Leonard Schwartz Nissan, Inc.,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.