[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a contractual dispute between two corporations over the price for the repair of a bulldozer. The plaintiff repaired the defendant's bulldozer. The quality of the repair is undisputed, and the plaintiff has not yet been paid anything. Both sides consequently agree that judgment must enter in favor of the plaintiff. The sole question for the court is the amount of damages. More specifically, the question concerns the compensation upon which the parties agreed for the work that was done.
This boils down to a question of credibility between two witnesses: Mark W. Niedbala, the president of West Track, and Rocco Neri, the president of The Sandpit. (A third witness, Thomas A. Deleo, a shareholder of The Sandpit, added a few relatively minor corroborating details.) The Court heard utterly different versions of the relevant events from these witnesses in the evidentiary hearing it conducted on February 14 and 20, 1991. The Court's task is made markedly more difficult by the fact that neither party was able to document its version of the relevant CT Page 1966 price negotiations in any way. There are no contemporary memoranda, letters, notes, written estimates, work orders with prices attached, or interim bills; there is only oral testimony. Of course, the Court must bear in mind the axiomatic proposition that the plaintiff bears the burden of proof. With all of this in mind, the Court concludes that the plaintiff was unable to sustain its burden of proof concerning the factual scenario and the agreed upon price that it advocated. Put bluntly, Neri was much more credible than Niedbala.
The court finds the following facts concerning the proper amount of damages. The Sandpit owned a large bulldozer (described as the size of a tank in the Persian Gulf War) that needed repair. West Track is in the business of repairing heavy equipment. In December 1988, Neri made a telephone call to West Track and spoke to a man named Bill White. White, who did not testify, was described by Niedbala as the parts manager for West Track. Whatever his official position, he was the single West Track employee with whom Neri dealt at all times relevant to this case. White told Neri that he would be happy to do the job and gave a "ball park figure" of $4,300 for the undercarriage repair work that was known to be needed at the time. It was understood that additional problems might be discovered once the machine was taken apart.
On December 28, 1988, Neri took the bulldozer to West Track's Massachusetts facility and spoke about the necessary repairs with White. Neri emphasized that he did not have much money and wanted to keep the price as low as possible. White agreed to use used parts to cut down the price as much as possible. The $4,300 he had quoted earlier had assumed the use of new parts for the repair of the undercarriage. With used parts, however, White said that the same total price could include a number of additional repairs as well. It was still understood that unexpected problems could appear once the machine was taken apart. White then wrote out a work order, signed by Neri, for a number of anticipated repairs. (Plaintiff's Exhibit 1.) No price appears on this order.
West Track subsequently took the bulldozer apart, and as it happened, a number of additional problems appeared. Through the next six or seven weeks Neri spoke with White (and only with White) on the telephone two or three times a week. The purpose of these phone calls was to carefully monitor both the work being done and the price that Neri would have to pay for it. At each step White would either quote Neri a price directly or say that he (White) would have to get back to him. In the latter case, White would subsequently get back to Neri with a price. In approximately the second week of February 1989, White and Neri had their last telephone conversation concerning the final repairs to the bulldozer. White told Neri that the price would be "no more CT Page 1967 than $10,000, and I'm figuring high." He said he would call when the machine was ready.
When Neri next called West Track toward the end of February, he was told that White no longer worked there. Shortly thereafter, a West Track employee called Neri and told him of a $19,400 bill. Neri made some excited utterances. Later, Neri was presented with a written bill for $19,404.15. (Plaintiff's Exhibit 4.) This marked the first time in the case that a price had been set down by either party in writing.
On April 18, 1989, Neri, who was understandably upset, retrieved the bulldozer from West Track in what can most charitably be called an act of singularly poor judgment. He and Deleo came to West Track with a bank check in the amount of $19,404.15 (West Track had insisted on this) and, after the bulldozer had been placed on a trailer, asked for a written warranty. While the warranty was being prepared, Neri and Deleo spirited away both the check and the bulldozer. The exact mechanics of how one spirits away a 40 ton bulldozer were never satisfactorily described to the Court, but somehow Neri ended up with both the check and the bulldozer. The Court cannot possibly condone this action, but this is a contract, rather than a criminal case, and the plaintiff does not argue that this incident estops the defendant from asserting the contractual rights that it would otherwise possess.
Niedbala testified that White was merely the parts manager and did not possess actual authority to conduct the price negotiations in question. Regardless of White's actual authority, however, the question of apparent authority remains.
"The aim of the courts in formulating and developing rules as to apparent authority has been to protect, under appropriate circumstances, a third party in his dealings with an agent who lacks express authority . . . . [I]f the agent is within the apparent scope of his authority, the principal is bound even though the former acts contrary to the latter's instructions." Keeler v. General Products, Inc., 137 Conn. 247, 251, 75 A.2d 486 (1950). "Apparent authority is derived not from the acts of the agent but from the deliberate or inadvertent acts of the principal." Edart Truck Rental Corp. v. B. Swirsky and Co., 23 Conn. App. 137, 139,579 A.2d 133 (1990). Edart Truck further explains that,
 Apparent authority has two elements. First, it must appear from the acts of the principal that "the principal held the agent out as possessing sufficient authority to embrace the act in question, or CT Page 1968 knowingly permitted him to act as having such authority. . . ." Nowak v. Capitol Motors, Inc., 158 Conn. 65, 69, 255 A.2d 845 (1969). Second, the party seeking to bind the principal must have acted in good faith reliance on that appearance of authority. Id. .
Id. at 139-40.
Both of these elements are satisfied here. It appears from the acts of West Track that West Track deliberately or inadvertently held White out as possessing sufficient authority to negotiate a price for the repair of the bulldozer in question. White met Neri at West Track's repair facility on December 28, 1988, quoted an estimated price, and wrote up the work order. Thereafter, for a period of six or seven weeks, White and only White spoke with Neri and quoted prices on the telephone from West Track's office. Under these circumstances, Neri was plainly justified in relying on White's representations, and acted in good faith in doing so.
West Track agreed at oral argument that if the court were to credit Neri's testimony and find these elements, the appropriate amount of damages to be awarded is $10,000. The Sandpit agrees.
Judgment consequently shall enter in favor of the plaintiff in the amount of $10,000 plus costs.
Dated at Waterbury this 12th day of March, 1991.
JON C. BLUE Judge of the Superior Court