This is a complicated foreclosure action that turns out to hinge upon two questions concerning a mechanic's lien. The action was originally brought by Calabrese Development Corporation ("Calabrese") against four defendants: Ralph Carpinella, d/b/a R. R. P. Realty ("Carpinella"); Rostra Engineered Components ("Rostra"); People's Bank (the "Bank"); Janazzo Heating Air Conditioning, Inc. ("Janazzo"); and Central Connecticut Acoustics, Inc. Calabrese is no longer a party to the lawsuit, and the action has come before the court on an Amended Cross-Claim (166) filed by Janazzo against the other defendants. For practical purposes, this has boiled down to a dispute among Janazzo, Carpinella, and the Bank. A lengthy evidentiary hearing was held before the court, participated in by the three parties just mentioned. This hearing focused on two questions: whether a contract (Ex. 15) (described in detail below) validly waived Janazzo's rights to place a mechanic's lien on Carpinella's property and to bring a lawsuit against Carpinella; and whether, assuming that Janazzo's lien is valid, that lien should have priority over a mortgage held by the Bank.
Janazzo is a mechanical contractor that designs and builds heating, ventilation, and air-conditioning systems for larger industrial buildings. In the trade, this is known as HVAC work. Janazzo's president is one Paul Holland ("Holland"). Ralph Carpinella owns a business called R. R. P. Realty. In the spring of 1988, Carpinella retained Calabrese to be the project manager on a job to build a large industrial building for Rostra. Although Carpinella and Holland apparently did not know each other, Calabrese had done a substantial amount of business with Holland and Janazzo in the past. Calabrese approached Janazzo about doing the HVAC work on the Rostra project, and eventually, in late May 1988, an oral agreement was made between Calabrese and Janazzo that Janazzo would get the job for $165,000. The person making this agreement for Janazzo was one David Macher ("Macher"). CT Page 5450
Macher was a project manager for Janazzo and was the project manager for the Rostra project. He had dealt with Calabrese on three or four previous projects that were similar to this one. Holland testified that it was probably Macher who had made the oral agreement with Calabrese in May 1988 to do the HVAC work on the Rostra job for $165,000. There are other indications in the record that Macher had a great deal of authority to act for Janazzo on the Rostra project. On August 29, 1988, he submitted a written proposal to "R. R. P. Realty c/o Calabrese Development Corp." to do the Rostra Project for $165,000. (Ex. 1.) On October 6, 1988, he submitted two proposals to Calabrese concerning additional proposed work on the process piping and sprinkler piping for the Rostra project. (Ex. 2 3.) By his own testimony he had many dealings with Calabrese and its employees concerning this project. And on October 11, 1988 he signed the contract in evidence as Ex. 15.
Janazzo prepared its HVAC plans for the Rostra project and ordered some rooftop units for the project in June 1988 (Ex. C, D E.) It did no work at the site, however, until after the rooftop units arrived in October 1988. At about this time someone on Calabrese's staff prepared the contract in evidence as Ex. 15 to be signed by Carpinella and Janazzo. The contract covers work on the HVAC, fire protection (sprinkler system), and process piping on the project. (Art. 1.) The work is to be commenced on October 17 and completed by December 15, 1988. (Art. 2.) The contract sum is $320,788, consisting of $165,000 for the HVAC, $77,400 for the fire protection, and $78,300 for the process piping. (Art. 3.) The total sum "thirty-five thousand dollars ($320,788.00)" is printed in art. 3.1, but the "thirty-five thousand" figure is obviously a clerical error in view of the individual numbers which add up to $320,788.
Art. 15.1.3 of the contract expressly provides that "Contractor [i.e. Janazzo] waives all rights to Mechanic's Lien on the real property on which the work is being performed." Art. 13.2 provides that "All claims or disputes between the contractor and the owner [R. R. P. Realty] arising out of, or relating to the Contract Documents or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of The American Arbitration Association then obtaining unless the parties mutually agree otherwise."
The contract is made "as of" March 11, 1988, and contains two signatures: that of Ralph Carpinella, dated "10/17/88"; and that of David Macher, dated "10/11/88." It consists of thirteen pages which have obviously been stapled and unstapled on a number of occasions. The signature page, which is plainly intended to be the last page, is, in fact, the second page in the actual exhibit. By CT Page 5451 carefully examining the first and third pages in the exhibit, one can clearly see the physical impression of Macher's signature. The court finds that Macher signed the signature page while it was either detached or folded over from the back and placed on top of the rest of the contract.
The evidentiary hearing focused to a considerable extent on the signature page of Ex. 15. To explain this, and to fully explain the court's findings, some background is necessary. Fred Gohringer, the Controller of Janazzo since December 8, 1988, testified that in February or March 1989, while he was preparing and filing lien papers, he came across a photocopy of the contract in one of Janazzo's Rostra files. That photocopy was introduced into evidence, over Janazzo's objection as Ex. 7 after Holland identified Macher's signature on the signature page.
Macher testified in court after Ex. 7 had been introduced but before Ex. 15 had come to light. Macher impressed the court as a scared and evasive witness. He testified on direct examination that he did not sign a contract for Janazzo on this project. (3/12/92 T. 15.) On cross-examination, he testified that "It appears that it's my signature," but that "I would never sign a document in this form. I don't have authorization to do it at the time, so, I would not have done it." (Id. 26). He also testified that he did not remember signing the document. (Id. 27.)
Under questioning by the court, however, Macher reaffirmed that the signature looked like his and disavowed any claim that the signature was a forgery. (Id. 60, 62). He then essentially admitted that he had, in fact, signed it. (Id. 63). The focus of the questioning then turned to the circumstances under which he had signed it. Macher testified that it was not conceivable under any circumstances that he would have signed the signature page without looking at the rest of the contract. (Id. 66, 68).
After Macher had finished his testimony, Joseph Calabrese testified and produced the signature copy of the contract (Ex. 15) of which Ex. 7 is an accurate photocopy. From this physical and testimonial evidence, the court finds that Macher signed Ex. 15 on October 11, 1988, after at least looking at the rest of the contract. The court further finds that this event occurred at a time when Janazzo's physical work on the Rostra site was about to commence, when Macher was the project manager for Janazzo, and just after October 6, 1988, when Macher had, in his capacity as project manager, submitted proposals to Calabrese concerning the process and sprinkler piping systems. (Ex. 2 3.)
At least as far as actual authority is concerned, however, the authority to submit proposals like Ex. 2 3 is one thing, and the authority to sign contracts like Ex. 15 is another. Both Holland CT Page 5452 and Macher testified that Macher did not have actual authority to sign contracts. According to their testimony, contracts such as this could only be signed by Holland himself. Holland's testimony was credible, and the court finds that Macher lacked actual authority to sign Ex. 15. On the other hand, it is crystal clear that, whatever Macher's actual authority was, Janazzo held him out to Calabrese and Carpinella as possessing sufficient authority to sign such documents.
The relevant facts concerning what might be termed the battle of the lien priorities can be succinctly stated. Janazzo began doing its off-site work concerning the Rostra project in late May or June 1988. It did not commence its on-site work until the arrival of the rooftop units in October 1988. In the meantime, the Bank filed its mortgage deed on August 18, 1988. (Ex. 11.) Janazzo filed a mechanic's lien on March 15, 1989. (Ex. H.) That lien states that, "The furnishing of said services, labor and materials commenced on the 4th day of November, 1988."
Janazzo's original cross-complaint (#114) alleged that "Janazzo began furnishing labor and materials to the project on November 4, 1988." On November 5, 1990, Janazzo filed a request for leave to amend its cross-complaint to allege that it "began furnishing design services, labor and materials to the project on May 17, 1988." On December 17, 1990, an objection to this request was overruled by the Hon. Robert McWeeny, and Janazzo was allowed to file its amendment.
The initial issue for the court to consider is whether the contract (Ex. 15) constitutes a valid waiver of Janazzo's rights to place a lien on Carpinella and to bring this lawsuit against Carpinella. This question must be addressed separately with respect to Carpinella and the Bank. As far as Carpinella is concerned, the answer is relatively clear. The waiver language contained in the contract is unambiguous. "[T]he plain and unmistakable terms of the writing [cannot] be varied by construction so as to import an exception into a general release of lien." Townsend v. Barlow, 101 Conn. 86, 90, 124 A. 832 (1924). The contract was signed by both Macher and Carpinella, and it is clear from its language that "the various parties intended to waive liens." Hillhouse v. Duca, 101 Conn. 92, 104, 125 A. 367 (1924). The contract was signed in October 1988 when the physical work on the Rostra premises was about to begin, and the signing of the contract, among other things, would have provided Carpinella (whose project, with the benefit of hindsight, was a shaky one, financially) with an increased ability to raise additional funds to pay contractors like Calabrese and Janazzo. Under these circumstances, the contract was supported by adequate consideration. See Bialowans v. Minor, 209 Conn. 212, 216, 550 A.2d 637
(1988); Townsend v. Barlow, supra, 101 Conn. at 89. Moreover, CT Page 5453 although Macher lacked actual authority to sign the contract, he had the apparent authority to bind Janazzo to the contract by his signature.
 As the Appellate Court has recently explained, Apparent authority has two elements. First, it must appear from the acts of the principal that "the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority . . . ." Nowak v. Capitol Motors, Inc., 158 Conn. 65, 69, 255 A.2d 845 (1969). Second, the party seeking to bind the principal must have acted in good faith reliance on that appearance of authority. Id.
Edart Truck Rental Corp. v. B. Swirsky Company, Inc.,23 Conn. App. 137, 139-40, 579 A.2d 133 (1990). As far as Carpinella is concerned, these elements are satisfied here. Macher was Janazzo's project manager for the Rostra project, was prominently involved in all aspects of its planning, and, as noted, was signing a number of other written proposals — including one (Ex. 1) to R. R. P. Realty — concerning this project at about this time. There was no possible way for anyone (other than Janazzo employees) involved with the project at this time to know that Macher lacked actual authority to sign Ex. 15. Second, after the contract was signed, the Rostra project was worked on and ultimately completed. The contract, with very few exceptions (like the obvious clerical error stating the total sum of the contract to be "thirty-five thousand dollars") sets forth the terms upon which the parties had agreed, and the court finds that Carpinella relied upon it sufficiently to bind Janazzo to the contract. The judgment that Janazzo seeks against Carpinella must consequently be denied.
The case against Carpinella is, however, something of a sideshow. The important question in this case concerns Janazzo's battle for lien priority with the Bank. When this question is addressed, the effect of the contract (Ex. 15) becomes much less clear. Recall the second element of apparent authority set forth in Edart Truck Rental: "The party seeking to bind the principal must have acted in good faith reliance on that appearance of authority." 23 Conn. App. at 139-40. (Emphasis added.) The Bank's mortgage deed was filed in August; the contract was not signed until October. Even though the contract purports to be effective as of the previous March, the Bank plainly did not rely upon the contract one iota. But in asserting the lien waiver clause against Janazzo, it is the Bank, not Carpinella, which is seeking to bind Janazzo.
Under this analysis, it would appear at first blush that the Bank cannot prevail against Janazzo on a claim of apparent authority, and since Macher lacked actual authority, the contract does not CT Page 5454 bind Janazzo against the Bank at all. This analysis is, however, somewhat oversimplified. The Bank is not seeking to bind Janazzo to the contract in quite the same sense that one party to a contract normally seeks to bind another. The Bank is not, for example, claiming that Janazzo should provide it with goods or services at a specified price. Rather, the battle here is one of lien priorities. The Bank is claiming that Janazzo's lien against Carpinella is invalid because Janazzo has waived its lien as to Carpinella. If Janazzo has in fact waived its lien as to Carpinella then the Bank's lien must consequently prevail. Although this analysis has something of the initially disorienting effect of a journey through a hall of mirrors, the court believes it to be logically and legally correct. Since Janazzo has, in fact, waived its lien as to Carpinella, the Bank's lien should be given priority over Janazzo's.
Because of the possibility that a reviewing court may disagree with the above analysis, it is appropriate to consider the second principal question presented in this case. If Janazzo's lien is indeed valid, does it have priority over the Bank's? Janazzo has two hurdles to overcome on this issue: the date of work commencement recited in the lien itself, and the fact that none of the materials it furnished or services it rendered prior to the filing of the Bank's mortgage involved any actual work on the premises.
The court agrees with Janazzo that, under the circumstances of this case, it is not estopped from claiming an earlier commencement date than that recited on the lien. It has long been established that an erroneous date of completion of work recited in a lien does not categorically estop a party from showing the real facts, Westland v. Goodman, 47 Conn. 83 (1879), and there is no reason in principal to require a different result if the date in question is one of commencement. Of course, a commencement dale must be recited in the lien, while a completion date need not, but a variance in this regard should ordinarily be "of no more importance than it is in a criminal prosecution or ordinary civil action." Westland v. Goodman, supra, 47 Conn. at 86. The real question is why a commencement date must be recited in a lien. The answer seems obvious: it is to provide notice. If a party relies on the text of the lien after it is filed, the lienor may be estopped from asserting a new version of the facts. See J.C. Penney Properties, Inc. v. Peter M. Santella Company, Inc., 210 Conn. 511,515, 555 A.2d 990 (1989) (certain lien certificate errors not fatal "where the mistake was made in good faith and no resulting prejudice was claimed"); Hartford Building Loan Association v. Goldreyer, 71 Conn. 95, 100, 41 A. 659 (1898) (reliance on an erroneous lien results in estoppel). No such grounds for estoppel exist here, and Janazzo is free to argue that its work commenced prior to the date recited on its lien. CT Page 5455
But when, for purposes of the mechanic's lien statute did Janazzo's work commence? The statutory text is opaque. Conn. Gen. Stat. 49-33 (d) provides that,
 If any instrument constituting a valid encumbrance . . . other than a mechanic's lien is filed for record . . . all such mechanic's liens originating prior to the filing of that instrument for record take precedence over that encumbrance. That encumbrance . . . shall take precedence over any mechanic's lien which originates for materials furnished or services rendered after the filing of that instrument for record
(Emphasis added.) The statutory text strongly suggests that the word "originates" refers to "materials furnished or services rendered," although the only statutory use of that latter phrase is in the context of events occurring "after the filing of that instrument for record."
The materials furnished and the services rendered by Janazzo at the time the Bank filed its mortgage were, however, not on the premises. In Middletown Savings Bank v. Fellowes, 42 Conn. 36,51 (1875), the Connecticut Supreme Court stated that there were "serious doubts, to say the least" whether work on a fence around a lot furnished grounds for the commencement of a lien where no work had been done on the actual buildings. The priority of Janazzo's lien here is even more doubtful than the mechanic's lien in Fellowes since someone visiting the premises on the day the Bank's mortgage was filed could not have detected Janazzo's work to that date with the aid of the most powerful telescope. This is important because the foundational concept underpinning the mechanic's lien statute is one of notice. See Waterbury Lumber Coal Co. v. Asterchinsky, 87 Conn. 316, 321, 87 A. 739
(1913). An encumbrancer is chargeable with notice of materials furnished or services rendered that have some form of visible impact on the property. Something more than merely preparatory off-premises work is required. Of course it is true, as Janazzo points out, that design services (such as those of an architect) are lienable, see Marchetti v. Sleeper, 100 Conn. 339, 342-43,123 A. 845 (1924), but the question of lien priorities involves a distinct analysis. Most jurisdictions have held that, to have priority, the work must "be of such a nature as to be reasonably apparent upon inspection." Annot., 1 A.L.R.3d 822, 825 (1965). Accord, Diversified Mortgage Investors v. Lloyd G. Blaylock General Contractor, Inc., 576 S.W.2d 794, 802 (Tex. 1978), and authorities cited therein. The work done by Janazzo here was not "reasonably apparent upon inspection." Rather, it would have been discoverable, if at all, only by extraordinary investigation. The mechanic's lien statute contemplates reasonable notice, not extraordinary investigation. Were the courts to hold otherwise "no prudent businessman would be willing to lend construction CT Page 5456 money." Aladdin Heating Corp. v. Trustees of Central States,563 P.2d 82, 84 (Nev. 1977).
For the foregoing reasons, Janazzo's mechanic's lien is junior to the Bank's mortgage.