[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATION FOR PREJUDGMENT ORDER OF REPLEVIN
Plaintiff applies for a prejudgment remedy, pursuant to General Statutes 52-278a et seq., in this action for replevin.
At the hearing on the application the plaintiff proved the following facts: On February 23, 1990 plaintiff loaned to defendant corporation $200,000 evidenced by a promissory note in that amount, secured by a Security Agreement on "all used models of passenger and commercial motor vehicles as well as used trailers and semi-trailers of all makes and models now owned or hereafter acquired, together with all equipment and accessories attached thereto and all proceeds of the foregoing", and by a UCC Financing Statement filed in the office of the secretary of the state.[1]
Defendant defaulted on the note and has not made any payments since October 1990. As of July 18, 1992, defendant owed on the note $195,727.
Defendant has not filed an answer but indicated at the hearing that special defenses alleged in other actions brought by plaintiff against defendant to foreclose on real properties of defendant should be considered in this action. In its brief defendant asserts the following defenses: (1) plaintiff's conduct violated an implied covenant to deal in good faith; (2) breach of contract; (3) fraud; (4) breach of fiduciary duty; (5) equitable estoppel.
Motions to strike the first two defenses were granted by Judge Julia Aurigemma in related cases on the ground they cannot legally be asserted in a foreclosure proceeding. This court, however, heard all the evidence offered by defendant CT Page 4129 as to the four special defenses and concludes that on all the evidence both as to plaintiff's complaint and defendant's defenses, there is probable cause that the plaintiff will prevail. Haxhi v. Moss, 25 Conn. App. 16, 20 (1991).
The facts underlying defendant's defenses are as follows. Plaintiff and Chapin Miller, sole stockholder of defendant corporation, started doing banking business together in 1976. Miller owned an insurance company, in addition to the defendant automobile dealership, and invested in real estate. The plaintiff financed him in all his enterprises, resulting in loans to Miller entities totaling approximately $2,000,000. These loans were cross-collateralized on real and personal property assets of Miller and his companies. Over the years plaintiff and Miller conducted business in a trusting and informal way. The relationship between them remained good until the end of 1989. In November 1989 the plaintiff, concerned about Miller's financial statements listing accounts receivables as cash, wrote to Miller demanding audited statements, while at the same time assuring Miller, "it is our intention to work closely with you, as we have in the past, to help you and your dealership grow toward a stronger financial picture." That letter began a series of negotiations in which Miller sought lowered interest rates and a 25-year amortization schedule on all his loans because he was experiencing a downturn in the automobile business and needed to reduce his cash obligations to the bank. During these negotiations, Miller continued to make payments on his loans until October 1990. These negotiations culminated in May 1991 with plaintiff making a commitment to refinance the loans to Miller and his companies in the amount of $1,656,000, payable over 25 years, and to be secured by mortgages on real property owned by all the Miller entities and by a UCC-1 recording on all business of defendant dealership. The commitment contained conditions which Miller refused to accept, so it was never effectuated. Eventually, plaintiff initiated this action in replevin for possession of defendant's assets and six other actions for foreclosure of mortgages.
In essence defendant asserts in its defense that plaintiff violated the implied covenant of good faith by refusing to modify the amortization schedule of defendant's loans and then agreeing to do so but when it was too late CT Page 4130 to help defendant out of its untenable position. The Restatement (Second) of Contracts at 205 (1979) recognizes an implied covenant of good faith and fair dealing in every contract, as does our General Statutes at 42a-1-203. Our Supreme Court has in Magnan v. Anaconda Industries, Inc.,193 Conn. 558, 567 (1984) interpreted that principle to mean: "Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy."
Here, the parties negotiated to alleviate the burdens on Miller and his companies to meet their clear obligations under loans made by plaintiff. Because of a downturn in the automobile and real estate markets, plaintiff imposed justifiable conditions to assure payment. The only contract between the parties was the 1990 note. Although the past relationship between parties had been good, defendant could not reasonably expect plaintiff not to act in a business-like manner to collect its loan. The hearing before this court failed to demonstrate any bad faith or unfair dealings by plaintiff.
Defendant's asserted defenses of breach of contract and fraud by plaintiff were not sustained by even a scintilla of evidence.
Defendant's claim of plaintiff's breach of fiduciary duty similarly fails. In Dunham v. Dunham, 204 Conn. 303,322 (1987), a fiduciary relationship is characterized "by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interest of the other." (underlining added). Here the plaintiff and defendant were in a lender-borrower relationship. The plaintiff bank had a right to further its own interest in the transaction and was under no duty to represent plaintiff's interest. Sherman Cooper, dba Fairfield Mortgage Company v. Burby,7 CSCR 591 (May 25, 1992).
Finally, defendant's defense of equitable estoppel was not established because there was no showing of misleading conduct by plaintiff upon which defendant CT Page 4131 justifiably and detrimentally relied. Edart Truck Rental Corp. v. Swirsky Co., Inc., 23 Conn. App. 137, 141 (1990).
Thus, this court concludes that plaintiff has shown probable cause to sustain the validity of its claim and a prejudgment order of replevin is granted, to the value of $200,000, on all business assets of defendant located at 40 West Street, Bristol including all cash accounts and notes receivable, all furniture, fixtures and equipment, and all used motor vehicles.
Robert Satter State Trial Referee