[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brought this action against the defendant claiming back rent for a portion of the property located at 116 Washington Avenue, North Haven, Connecticut. The property is owned by the plaintiff and was previously occupied by the defendant. The plaintiff also claimed attorney's fees, interest and reasonable costs of collection. The defendant filed six special defenses, claiming estoppel, that the holding over by the defendant created a month to month tenancy, that the original lease could not be modified orally, that the plaintiff failed to mitigate his damages, that the statute of limitations barred the action, and, finally, an accord and satisfaction.
FACTS
On December 1, 1984, the parties to this action entered into a lease for the premises located on the fourth floor of a building located at 116 Washington Avenue, North Haven, Connecticut. Exhibit A. In 1979, the parties had a prior lease for space located in the same building. Exhibit 4. In 1981, the plaintiff relocated the defendant from the second floor to the fourth floor. Sometime after December 1, 1984, the defendant moved, at the plaintiff's expense, to space located on the third floor consisting of approximately 1200 sq. ft. Exhibit F. Sometime in 1988, the defendant expressed an interest in additional space on the third floor. The parties negotiated for some time. Exhibits B, C and D. The parties reached an agreement for the rental of an additional CT Page 8758 880 sq. ft., consisting of a lunch room, an office and additional work space. Exhibit G. The parties did not enter into nor did they subsequently make a written memorandum of their agreement. The defendant took occupancy of the additional space; however, from the evidence presented at trial, the exact date of the commencement of the occupancy is unclear. The agreement of the parties was that the original lease would be modified to include the additional space. The term of the lease would be extended through January, 1992. The rent commencing February, 1989 would be at the monthly rent of $3,292.00. The plaintiff performed the work necessary on the additional space to prepare it for the defendant's occupancy. The defendant paid and the plaintiff accepted the monthly rent of $3,292.00 from February, 1989 through September, 1991, leaving the rent unpaid for the months October, 1991 through January, 1992. The defendant vacated the premises by the end of September, 1991.[1]
At all relevant times, the plaintiff dealt only with the defendant's agent, Larry Blake, with regard to the tenancy of the defendant. The dealings of the plaintiff with Mr. Blake included the two moves of the defendant within 116 Washington Avenue, all day to day activities concerning the tenancy and all negotiations for the renting of the additional space. Mr. Blake was the manager of the defendant's North Haven office located at 116 Washington Ave. The president of the defendant, Daniel Krout, knew or should have known of Mr. Blake's activities in dealing with the plaintiff; did nothing to dissuade the plaintiff from believing that Mr. Blake had authority to enter into said activities; and knowingly permitted Mr. Blake to act as having the authority to enter into said activities. Mr. Krout, in letter dated September 3, 1991 to the plaintiff, acknowledged that Mr. Blake had a conversation with the plaintiff regarding the tenancy. Exhibit E. The plaintiff reasonably believed that Mr. Blake had the necessary authority to bind the defendant and accordingly acted in good faith by completing the required construction in the additional space, allowing the defendant to occupy said space and accepting rental payments for said space.
On September 3, 1991, Mr. Krout sent a letter to the plaintiff informing him that the defendant would be vacating the premises. Exhibit E. Enclosed with said letter was the September, 1991 rent check. Exhibit 2. Said letter also stated that said check would "be the final payment." Exhibit E.
After the defendant vacated the premises, the plaintiff attempted to re-rent the premises by dealing with four local CT Page 8759 brokers: The H. Pierce Company, Caldwell Banker, C.B. Commercial and Raveis Realty. The plaintiff did some advertising on radio and displayed an eighty foot banner on the building in which the premises are located. The plaintiff showed the premises on four separate occasions. The plaintiff was unsuccessful at re-renting the premises before February, 1992.
DISCUSSION
I. Apparent Authority
"Courts have developed the doctrine of apparent authority to protect, under proper circumstances, a third person in his dealings with an agent who lacks express authority." (Internal quotation marks omitted; citation omitted.) Edart Truck Rental Corp. v. B.Swirsky Co., 23 Conn. App. 137, 140, 579 A.2d 133 (1990).
 Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences,
causes or allows third persons to believe his agent possesses. Consequently, apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal. The issue of apparent authority is one of fact to be determined based on two criteria. First, it must appear from the principal's conduct, that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority. Second, the party dealing with the agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action.
(Emphasis added.) (Internal quotation marks omitted; citations omitted.) Tomlinson v. Board of Education, 226 Conn. 704, 734-35,629 A.2d 333 (1993).
"Apparent authority maybe derived from a course of dealing."Edart Truck Rental Corp. v. B. Swirsky Co., supra, 23 Conn. App. 140. "A `principal cannot be justified in willfully closing his eyes to knowledge.'" Id., 141, citing 1 F. Mechem, Agency (2d. Ed.) 404. Comment "a" of the Restatement (Second) Agency, § 27, provides that "either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should CT Page 8760 realize that his conduct is likely to create such belief." SeeHartford Fire Ins. Co. v. Marsala, Superior Court, judicial district of Ansonia/Milford, Docket No. 039597 (January 25, 1993, McGrath, J.).
The court finds that Larry Blake possessed the apparent authority to bind the defendant, LCA, Inc., the principal, to the agreement with the plaintiff. Even if the court found that Daniel Krout, the president of the defendant corporation, never held Mr. Blake out to the plaintiff as possessing sufficient authority to bind the defendant corporation to a lease agreement, the court found that Krout knowingly permitted Mr. Blake to act as having such authority.
II. Statute of Frauds and the Part Performance Doctrine
Pursuant to General Statutes § 52-550(a)(4), no civil action may be maintained upon any agreement for any interest in or concerning real property "unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged."
The Connecticut Supreme Court has "held that acts on the part of the promisee may be sufficient to take a contract out of the statute [of frauds] if they are such as clearly refer to some contract in relation to the matter in dispute." (Internal quotation marks omitted; citations omitted.) Ubysz v. DiPietro, 185 Conn. 47,54, 440 A.2d 830 (1981).
 The doctrine of part performance arose from the necessity of preventing the statute against frauds from becoming an engine of fraud. The acts of part performance generally must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties. The acts also must be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute. These criteria have recently been restated to require a showing that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, CT Page 8761 has so changed his position that injustice can be avoided only by specific performance.
(Internal quotation marks omitted; citations omitted.) Id.
"Contracts that would otherwise be unenforceable without a writing sufficient to comply with the Statute of Frauds, General Statutes § 52-550, are nonetheless enforceable because of part performance if two separate but related criteria are satisfied." H.Pearce Real Estate Co. v. Kaiser, 176 Conn. 442, 443, 408 A.2d 230
(1979).
 First, the contract alleged must satisfy the evidentiary function of the Statute of Frauds. To constitute part performance the conduct relied upon must be referable to and consistent with the oral agreement. Second, the conduct alleged to have been induced by reliance on the oral agreement must be of such character that repudiation of the contract by the other party would amount to the perpetration of a fraud.
(Internal quotation marks omitted; citations omitted.) Id.
"Entry and payment of rent under a lease, especially when no denial of its validity is asserted or indicated by the lessor until just before the expiration of the original term, may constitute such part performance as to estop the lessor from setting up the defense of the Statute of Frauds." Galvin v. Simons, 128 Conn. 616,619-20, 25 A.2d 64 (1942).
In the present case, the court finds that Mr. Blake, the agent of the defendant corporation, and the plaintiff entered into an oral agreement in which the plaintiff was to lease to the defendant the additional space at a rate of $3,292.00 per month, for a three year term commencing in February, 1989. The court further, finds that while the agreement does not satisfy the requirements of the Statute of Frauds, the agreement is nevertheless enforceable pursuant to the part performance doctrine.
The plaintiff reasonably relied upon the contract and completed the construction on the additional space to make it ready for the defendant's occupancy. The acceptance of the monthly rental payments at the increased rate of $3,292.00 by the plaintiff constitutes the act of part performance by the party seeking to contract. Accordingly, the court finds that the defendant has CT Page 8762 failed to tender four monthly payments (October, 1991 through January, 1992) of $3,292.00 totaling $13,168.00.[2]
III. Accord and Satisfaction
The defendant contends that its letter to the plaintiff, dated September 3, 1991, notifying the plaintiff that it was vacating the property, with the September, 1991 rent check enclosed, and the plaintiff's subsequent cashing of the check, constitutes an accord and satisfaction. The defendant relies upon the following statement in the letter: "The enclosed check is for September's rent and will be the final payment." Exhibit E.
The Connecticut Supreme Court set forth the law of accord and satisfaction in County Fire Door Corp. v. C.F. Wooding Co.,202 Conn. 277, 520 A.2d 1028 (1987).
 When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim. Such a contract is often initiated by the debtor, who offers an accord by tendering a check as `payment in full' or `in full satisfaction.' If the creditor knowingly cashes such a check, or otherwise exercises full domain over it, the creditor is deemed to have assented to the offer of accord. Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract of accord is supported by consideration.
 A contract of accord and satisfaction is sufficiently supported by consideration if it settles a monetary claim that is unliquidated in amount. This court has had numerous occasions to decide whether, in the context of accord and satisfaction, a claim is unliquidated when the debtor tenders payment in an amount that does not exceed that to which the creditor is concededly entitled. Where it is admitted that one of two specified sums is due, but there is a dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction . . . . Where the claim is unliquidated any sum, given and received in CT Page 8763 settlement of the dispute, is a sufficient consideration.
Id., 281-82.
"[A] condition precedent to the making of a contract of accord and satisfaction is that there be a dispute as to the amount owed or an unliquidated claim." O P Realty v. Santana, 17 Conn. App. 314,551 A.2d 1287 (1989). "The defense of accord and satisfaction required the defendant to prove an accord, that is, an agreement to accept a lesser amount in settlement of the claim and satisfaction, that is payment of that amount by the defendant. Part payment of a debt does not operate to discharge the whole unless the creditor assents to receive part payment as such." Scotts of Wisconsin v. R S Dist., Inc., Superior Court, judicial district of New Haven, Docket No. 310679 (August 6, 1993, Hodgson, J.), citing FirstHartford Realty Corp. v. Ellis, 181 Conn. 25, 34, 434 A.2d 314
(1980). An accord also requires mutual assent, i.e., a meeting of the minds. Gillis v. Gillis, 21 Conn. App. 549, 552, 575 A.2d 230
(1990).
"[T]he defense of accord and satisfaction requires the defendant to allege that the new agreement be offered by the debtor. and accepted by the creditor with the intent to satisfy the whole claim, and that the effect of its acceptance must be made known to the creditor in some unmistakable manner so that he is bound to understand that if he takes it, he takes it in full satisfaction of his claim." (Internal quotation marks omitted.) Yorke v. ExecutiveDodge, Inc., Superior Court, judicial district of New Haven, Docket No. 311406 (September 18, 1992, Zoarski, J.), citing Keller v.Rohde, 109 Conn. 244, 248, 146 A. 288 (1929).
The court finds that the language used in Exhibit E is insufficient to constitute an accord. The court finds that the language "will be the final payment" does not make known to the plaintiff "in some unmistakable manner" that if he took the check, he took it in full satisfactions of the defendant's claim. Id.
Therefore, the plaintiff should not be denied recovery based upon this defense.
IV. Mitigation of Damages
The defendant argues that if the court awards damages to the plaintiff, "the award should be reduced on account of the Plaintiff's failure to engage in a reasonable effort to mitigate its damages." CT Page 8764
The failure to mitigate damages is not a defense to an action for breach of contract, but rather a fact to be considered in determining the amount of damages to be awarded after liability has been determined. Danpar Associates v. Somersville Mills Sales Room,Inc., 182 Conn. 444, 438 A.2d 708 (1980).
 When the lessee breaches a lease for commercial property, the lessor has two options: (1) to terminate the tenancy; or (2) to refuse to accept the surrender. Where the landlord elects to continue the tenancy, he may sue to recover the rent due under the terms of the lease. Under this course of action, the landlord is under no duty to mitigate damages. When the landlord elects to terminate the tenancy, however, the action is one for breach of contract and, when the tenancy is terminated, the landlord is obliged to mitigate his damages.
(Citations omitted.) Rokalor, Inc. v. Connecticut EatingEnterprises, Inc., 18 Conn. App. 384, 388, 558 A.2d 265 (1989). "The duty to mitigate requires a landlord to make reasonable efforts to minimize damages which includes taking steps to relet the premises. What constitutes reasonable efforts is a question offact for the trier." (Emphasis added.) (Internal quotation marks omitted; citations omitted.) Id., 390.
In the present case, the court finds that the plaintiff made reasonable efforts to mitigate its damages as set forth in the facts above. Thus, any damages awarded to the plaintiff should not be reduced for the plaintiff's failure to mitigate damages.
CONCLUSION
For the foregoing reasons, judgment may enter in favor of the plaintiff in the amount of $13,168.00. The court concludes that the defendant abandoned its special defenses of estoppel and the statute of limitations, since no evidence was put forward during trial regarding them at oral argument defendant's counsel did not raise them nor were they discussed in the defendant's Post-Trial Brief.
Mintz, J.