[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ARTICULATION OF ORDER GRANTING PREJUDGEMENT REMEDY
The court granted the plaintiff's application for a prejudgment remedy in the amount of $20,800. Defendant seeks an articulation of the court's order.
The court's determination that the plaintiff established probable cause for the granting of the prejudgment remedy was based on two factors: (1) the apparent authority of John Scholl to sign the listing agreements on behalf of the defendant corporation; and (2) the plaintiff's substantial compliance with the listing statute, General Statutes § 20-325a.
"Apparent authority has two elements. First, it must appear from the acts of the principal that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as such authority. . . . Second, the party seeking to bind the principal must have acted in good faith reliance on that appearance of authority. . . . Apparent authority may be derived from a course of dealing." Edart Truck Rental Corp. v. B. Swirsky Co., CT Page 996923 Conn. App. 137, 139-40, 579 A.2d 133 (1990).
During the hearings on the prejudgment remedy, the court received the following testimony. Thomas Assheton testified for the plaintiff that on a listing agreement dated March 13, 1997, Contemporary Habitat was listed as the owner, and John Scholl's signature appears on behalf of Contemporary Habitat. (Transcript, September 29, 1997, pp. 15-16. Assheton testified on cross examination that Scholl's name was signed without any indication that it was done so on behalf of Contemporary Habitat, but that the name Cook Krupa appeared below Scholl's signature on the listing agreement. (Transcript, September 29, 1997, p. 21).[1]
Daryll Ann Carter, a salesperson employed by the plaintiff, was the representative who signed the listing agreement on behalf of the plaintiff. (Transcript, September 29, 1997, p. 24). Before being employed by the plaintiff, Carter was working for Coldwell Banker Schlott, another real estate office. (Transcript, September 29, 1997, p 26). She became aware of the subject subdivision through a builder named Lee Ramsdell, who informed her that Contemporary Habitat was trying to get a condominium built on the land. (Transcript, September 29, 1997, p. 26). Subsequently, Carter met all of the Contemporary Habitat people, including Scholl, at Coldwell Banker Schlott. (Transcript, September 29, 1997, p. 27). Carter was told that Scholl was a vice president of Contemporary Habitat. (Transcript, October 27, 1997, p. 29). Early on, most of Carter's dealings with Contemporary Habitat while employed by Coldwell Banker Schlott and the plaintiff were through Frank Meier, president of Contemporary Habitat. (Transcript, September 29, 1997, p. 27; October 27, 1997, p. 74). As Meier became less involved with the day-to-day functions of Contemporary Habitat, Carter relied on Scholl and others to continue the business of selling lots in the subdivision. (Transcript, September 29, 1997, p. 28). Carter testified that when calling Contemporary Habitat to speak with Meier, it was often Scholl who returned her calls. (Transcript, September 29, 1997, pp. 28-29. Carter further testified that when selling other lots in the subdivision, not involved in this litigation for Contemporary Habitat, Scholl had signed the listing of agreement on behalf of Contemporary Habitat as seller. (Transcript, September 29, 1997, pp. 30, 32, 33). Significantly, Carter was paid a commission on these sales by Contemporary Habitat. (Transcript, September 29, 1997, pp. 30, 32). Later, when Carter's telephone calls were becoming less frequently returned by Contemporary Habitat, Scholl would CT Page 9970 complain that Contemporary Habitat needed more money for the lots. (Transcript, September 29, 1997, p. 35).
In contradiction to Carter's testimony, Meier testified that Scholl did not have the authority to sign deeds on behalf of Contemporary Habitat; nor was he an officer or director of Contemporary Habitat. (Transcript, October 27, 1997, pp. 65-66; 75). According to Meier, only he, his wife and Ramsdell were officers of Contemporary Habitat. (Transcript, October 27, 1997, p. 77). For several of the listing agreements, Meier was unconcerned with having Scholl sign on behalf of Contemporary Habitat. (Transcript, October 27, 1997, p. 81). Indeed, upon learning that Scholl had signed two listing agreements on behalf of Contemporary Habitat, Meier "didn't make an issue of it." (Transcript, October 27, 1997, p. 89).
"In acting on a prejudgment remedy motion, the trial court must evaluate the arguments and evidence produced by both parties to determine whether there is probable cause to sustain the validity of the plaintiff's claim. . . . [T]he trial court, vested with broad discretion, need determine only the likely success of the plaintiff's claim by weighing probabilities. . . . Civil probable cause constitutes a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action. . . . The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim." (Citations omitted; internal quotation marks omitted.)Tyler v. Schnabel, 34 Conn. App. 216, 219-22, 641 A.2d 388
(1994).
Based upon the facts as received by the court, it is reasonable to conclude that Contemporary Habitat knowingly permitted Scholl to act as its agent regarding listing agreements, and the plaintiff acted in good faith reliance on reasonable belief and through various dealings with Contemporary Habitat that Scholl was Contemporary Habitat's agent. Contrary to the defendant's stance, the normal common law rules of agency, including the concepts of actual and apparent authority, are applicable to circumstances involving listing agreements. SeeMorelli v. Pezzello, Superior Court, judicial district of New London at New London, Docket No. 520918 (February 9, 1993, Hurley, J.).
Despite the fact that there were deficiencies regarding the CT Page 9971 failure to list the owner's address on the listing agreement pursuant to General Statutes § 20-325a(b)(2), the listing agreement does not become void as a result. General Statutes § 20-325a(c) provides: "Nothing in subsection (a) of this section shall prevent any licensee from recovering any commission, compensation or other payment in respect to any acts done or services rendered, if such person has substantially complied with subdivisions (2) through (6), inclusive, of subsection (b) of this section and it would be inequitable to deny such recovery." Both elements listed under § 20-325a(c) have been satisfied. The failure to supply one address does not preclude a finding of substantial compliance. Further, in light of the fact that comparable agreements were honored in the past, it would not be equitable to preclude a prejudgment remedy here.
THOMAS NADEAU, J.